National Surety Co. *v.* Hall-Miller Decorating Co.

[61 South. 700]

1. Public Buildings.    *Contracts of trustees.    Ultra vires.    Bonds of indemnity.    Consideration.    Beneficiaries.    Corporations.    Defenses.*

In all cases public boards, when given the power to contract for the doing of public work, have the power to require the contractor to give bond for the protection of subcontractors and others furnishing material and labor for the building, as such bond supplies the place of the mechanics' lien law, renders the laborer and materialman safe, prevents the abandonment of the work, and is thus of the highest benefit to the state.

2. Same.

Where as one of the conditions of the letting of the contract for a public work, and as one of the considerations thereof, the board of trustees of a public institution exacted a bond to insure the payment of the subcontractors and materialmen, this was not an unreasonable thing to do and it required nothing of the contractors which the law did not require it to do, except to obtain some one to insure the performance of a plain, legal and moral duty.

3. Same.

In such case the giving of a bond by the contractor to secure the subcontractors, materialmen and laborers was a part of the consideration which enabled the contractor to procure the contract and, it being within the power of the board of trustees to require such bond, it inures to the benefit of all persons named therein.

4. Corporations.    *Ultra vires as a defense.*

The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong.

Appeal from the chancery court of Hinds county.
Hon. G. G. Lyell, Chancellor.
Consolidated suit by the Hall-Miller Decorating Company and others against the National Surety Company

and others. From a decree overruling its demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson,* for appellant.

*Watkins & Watkins* and *Wells & Wells,* for appellee.

Counsel on both sides filed elaborate briefs too long for publication.

Cook, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Hinds county overruling appellant's demurrer to several bills of complaint filed by certain subcontractors against the Reusch Contracting Company and the National Surety Company, surety upon its bonds for the performance of its contract to construct the State Charity Hospital at Jackson. These bills made the board of trustees of the Mississippi State Charity Hospital parties thereto, and the state intervened in the litigation. All of these suits were consolidated, and all will be settled by this appeal.

It will be noted that a demurrer was sustained to the bill of the state and the board of trustees, from which decree there was no appeal. The board of trustees of the hospital made a contract with the Reusch Contracting Company to build the hospital, and the contractors made subcontracts with the several complainants to furnish material and construct certain parts of the building. The contractors failed to pay the subcontractors, and these bills were filed to hold the surety company upon its bonds of indemnity.

The Reusch Contracting Company, in the contract to erect the building, bound itself to furnish all material and labor necessary to the completion, within a specified time, of the building according to certain specifications named in or made a part of the contract. The owner, in

consideration of the erection of the hospital, agreed to pay the builder an agreed sum of money, to wit, forty nine thousand eight hundred and forty-five dollars. As an incident to this building contract, and in furtherance of its performance within the time limit, the contractor, contemporaneously with the execution of the same, executed a bond, with the National Surety Company as surety, obligating itself and its surety to pay the board of trustees of the Mississippi State Charity Hospital and to all subcontractors, workmen, laborers, mechanics, and furnishers of material jointly, as their interests may appear, the sum of twenty-five thousand dollars, if it should fail to complete the building according to contract, or if it should fail to pay all of the subcontractors, workmen, laborers, mechanics, and furnishers of material whom it should employ under its said contract. In short, the contractors contracted to furnish all material and labor, and to build within the time fixed a certain building, and at the same time executed a bond in the penalty of twenty-five thousand dollars, with the National Surety Company as surety thereon, payable to the owners of the building, and to all subcontractors, materialmen, workmen, laborers, and mechanics, and binding itself and its surety thereby to complete the work within the time limit, and binding itself and its surety to pay for all material used in said building, and to pay for all the labor done upon the building, and in default thereof binding it and its surety to forfeit to the obligees, as their interest may appear, the sum of twenty-five thousand dollars.

It is contended by appellant that the bond sued on must be read in connection with the contract and the specifications made part of it; and, in reading the two together, the words in the condition of the bond, "and shall pay all subcontractors, workmen, laborers, mechanics, and furnishers of material whom he shall employ under his said contract," are mere surplusage and without legal effect. Two questions are presented by this contention, viz.:

First, the power of the trustees of the hospital to make or accept a bond for the benefit of third persons; and, second, the right of third persons, the complainants (appellees), to sue upon the bond as a contract made for their benefit.

After stating the question involved here, appellant tentatively admits that the board of trustees was impliedly empowered to require the contractor to execute a bond for the faithful performance of his contract with the board of trustees, but that this power cannot be extended to cover an indemnity to subcontractors. In other words, it is conceded that, while an express power to erect the building carried with it the power to exact a bond from the contractors to insure their performance of their contract to erect the building, the board of trustees was not thereby authorized to demand anything more, and, in the absence of statutory authority, that part of the bond securing the claims of subcontractors was beyond the power of the board to take, or to enforce after it was taken. It does not appear that anything was required of the contractor which he was not perfectly willing to agree to, and we assume that this bond was executed without pressure from the trustees. It is probable that the bond was given voluntarily and in good faith, and the parties to same were not disturbed by the doctrine of *ultra vires*.

Was the provision of the bond for the benefit of subcontractors, materialmen, and laborers *ultra vires*? There is authority for and against the power. In *Knapp* v. *Swaney*, 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397, Judge Cooley rendered the opinion of the court, saying: "The county may go to great pains and great expense to make its courthouse unquestionably safe, that individual citizens may not suffer injuries consequent upon its construction. But if it may do this, it would be very strange if it were found lacking in authority to stipulate in the contract for the building that the contractors, when calling for payment, shall show that they are performing

their obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of the few of its people. . . . We are of the opinion that there was nothing *ultra vires* in this condition, and that the relators are bound by it." In *U. S. Gypsum Co.* v. *Gleason,* 135 Wis. 539, 116 N. W. 238, 17 L. R. A. (N. S.) 906, referring to a contract for the erection of a public building, wherein it was provided that the claims for labor performed and material furnished should be paid by the contractor, the court said: "This authority is one incident to the powers given it to erect such a building and provide for payment therefor. . . . But in ascertaining the extent of a grant authorizing the doing of some specific thing it is to be taken as embracing the authority to do every proper act incident thereto and appropriate in the usual and ordinary course to carry such authority into execution. . . . We are of opinion that the county had power in this case to contract and secure the plaintiffs as it provided in the contract and the bond given by defendants."

The same rule is announced in many of the states. In all of these cases it is held that public boards, like the board of trustees in this case, when given the power to contract for the doing of public work, have the power to require the contractor to do certain things for the benefit of third persons before they can collect from the public the money due them by the public for the doing of the public work; and some of them hold that such boards also have the inherent power, without statutory grant, to require bonds to secure subcontractors, laborers, and materialmen. *City and County of Denver* v. *Hindry,* 40 Colo. 42, 90 Pac. 1028, 11 L. R. A. (N. S.) 1028; *Knight & Jillson Co.* v. *Castle,* 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573; *School District* v. *Iron Works,* 147 Mo. 580, 49 S. W. 507; *Snider* v. *Wilkinson Lumber Co.* (Ind. App.), 96 N. E. 960; *Plumbing & Heating Co.* v. *McClay,*

43 Neb. 649, 62 N. W. 50; *Lyman* v. *City of Lincoln,* 38 Neb. 794, 57 N. W. 532; *Ochs* v. *Carnahan,* 42 Ind. App. 160, 76 N. E. 788, 80 N. E. 163; *St. Louis Public Schools* v. *Woods,* 77 Mo. 197; *Baxter* v. *Camp,* 71 Conn. 245, 41 Atl. 803, 42 L. R. A. 514, 71 Am. St. Rep. 169, and *Jefferson* v. *Asch,* 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. Rep. 618, are the two leading authorities for the lack of power in municipal boards and statutory boards generally to make contracts of the character here involved without express authority.

It would seem that there is no sound reason why the board of trustees would not be empowered to provide for the protection of subcontractors and others furnishing material and labor for the building. The legislature could have conferred this power upon the board, and such a statute would not be a subject of just criticism. But it is said that this was not done, and, that being true, the board of trustees were without power to accept this bond. It seems to us that the trustees had power to make any and all contracts necessary or proper to make in carrying out the erection of the hospital. The power to build certainly carries with it, as a necessary incident, the power to make such terms with the contractor as in the opinion of the trustees would best promote the speedy construction of the building. In the exercise of this power we can see no reason why the trustees should be confined to the mere making of the contract with some person to build the hospital, and it seems clear to us that the clause of the bond for the benefit of those who did the work or furnished material for the house does not violate any rule of law or equity; but, on the contrary, we can see the sound business policy in this clause, quite aside from any sentimental or moral obligations to treat "knights of the hatchet and saw" as preferred above other litigants.

Taking it as a cold-blooded business proposition, this clause in the bond would naturally encourage subcontrac-

tors of the best sort to take contracts to do certain parts
of the work; it would tend to prevent the abandonment
of the work by mechanics not promptly paid their wages
by the contractors, who might be suspected to be of doubt-
ful financial solvency; it would procure the best work and
material, and the prompt services of all workers and sub-
contractors; and all of this would redound to the benefit
of the public. It must be borne in mind that the mechan-
ics, materialmen, and laborers could have no lien upon
the building, and that the trustees, representing the state,
would not be bound to reserve money with which to pay
their claims; but they would have to depend upon the con-
tractor alone. Taking these things into consideration,
the bond, in a way, supplied the place of the mechanic's
lien law, and thus gave an additional security to all per-
sons working upon this building and supplying material
therefor; and this alone was, in our opinion, of the high-
est importance to the state.

Another reason urged why this bond is void is that the
contract does not require the contractor to give the bond
to secure third persons not parties to the contract. We
think this view unduly narrows the contract. The con-
tract consists of the two instruments, and they must be
taken together; and, when so taken, they make the final
and complete contract between the parties. Besides, the
subcontractors are made parties to the contract, and the
bond was executed in their interests. The bond does not
require the contractor to do anything which the law did
not require it to do, in so far as the subcontractors are
concerned, and it is difficult to see why the surety could
not be bound by its contract to insure his doing his plain
legal and moral duty, although it be conceded that the
board of trustees did not have the power to demand the
bond. There is certainly no inhibition against the con-
tractor entering into such a contract with his subcon-
tractors, either by name or by a general clause in the
bond.

Stated more accurately, as one of the conditions of the letting of the contract, and as one of the considerations therefor, the board of trustees exacted the bond to insure the payment of the subcontractors and materialmen. This was not an unreasonable or improper thing to do, and it required nothing of the contractor which the law did not require it to do, except to obtain some one to insure the performance of a plain legal and moral duty.

The contention that the clause of the bond challenged as invalid was without consideration is, in our opinion, unsound. This was a part of the consideration which enabled the contractor to procure the contract, and would have the effect of encouraging contracts with the contractor, and the bills so allege. There can be no doubt of the intention of the parties. The language of the bond is unambiguous; and, if it was within the power of the trustees to require the bond, it manifestly inures to all persons named therein.

It is the policy of the law to look with disfavor upon the defense of *ultra vires*. The Supreme Court of the United States, in *Ohio & M. R. R. Co.* v. *McCarthy*, 96 U. S. 258, 24 L. Ed. 693, said: "The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail, where it would defeat the ends of justice, or work a legal wrong." See, also, *Edwards County* v. *Jennings* (Tex. Civ. App.), 33 S. W. 585. To discover what contract the bond refers to, it is necessary to read the contract; and it is thus both the bond and the contract constitute the entire contract. The contract requires the contractors to furnish all labor and material, and to furnish it they must pay for it, and to afford them credit for that purpose, and to expedite the work by mechanics capable and willing, the parties to the contract agreed that the bond in question should be executed. An advantage was obtained by the trustees, and an extra credit was given to the contractors; and, it being the duty of the trustees to erect a building with as little delay as possi-

ble, and to do so upon the best terms obtainable, we are of the opinion that the plea of *ultra vires,* if upheld, "would defeat the ends of justice," and to deny the plea will only require the contractors and their surety to carry out their obligations advisedly assumed.

Affirmed, with leave to answer the bill within thirty days from the filing of the mandate in the trial court.

*Affirmed.*