UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE, MD., ET AL. v. MARATHON LUMBER CO. ET AL.

[81 South. 492, Division A, No. 20564.]

1. STATE CONTRACTS. *Lien on funds.*

Since no lien for labor and material attaches to a state building for the erection thereof, funds in the hands of the agents of

the state for the payment of the contractor cannot be applied to the payment of labor and material claims unless authorized by the contract.

2. STATE CONTRACTS. *Contractor's bond. Rights of laborers and materialmen.*

Where a contractor entered into a contract for the erection of a state building, which contract provided that the contractor should furnish all labor and material for the erection of the building in accordance with the plans and specifications and should give bond insuring the fulfillment of all the provisions of the contract and covering all guarantees provided for in the contract and the prompt payment of all persons furnishing labor and material required in the prosecution of the work, and said contract further provided for the retention of funds to satisfy claims for labor performed and materials furnished, and the contractor, gave bond in a surety company: "To do and perform all things contemplated by said contract, together with all its terms, covenants and conditions, specifications and stipulations," and assigned to his bondsmen the surety company all his rights under his contract, and thereafter defaulted on his contract and the surety company as allowed by the contract went forward and completed the building at a loss, in such case the surety company became subrogated to all the rights and liabilities of the contractor and was obligated to pay claims for labor performed and material furnished prior to the contractor's default and the laborers and materialmen had an equitable right to payment out of the funds retained superior to the sureties on the bond.

3. SAME.

In such case while it true the surety company bondsman was subrogated to the rights of the owner and contractor, yet it also assumed the contractor's burden imposed by the contract. It agreed as the subrogated successor of the contractor, to do those things which the contractor would have been bound to do in fulfilling the contract.

4. SAME.

In such case, the bond having been given to secure the performance of each and every covenant of the contract, one of which was that the amount due for labor and material furnished might be deducted, retained, and paid by the board of trustees at any time and out of any funds due the contractor during the period of the contract. It was proper to deduct the amount due the laborers and materialmen out of any funds due the contractor or its substitute, the subrogated surety company.

5. Contracts. *Optional provisions. Exercising option.*

Notwithstanding a provision in a building contract provided that the trustees may "retain out of any payment due or thereafter to become due the contractor an amount sufficient to completely satisfy the laborers or materialmen," was optional and discretionary and such option was not exercised by the trustees against the contractor before default nor against the surety company, the bondsman, yet the trustees could exercise the option at any time while the building was in course of construction or afterwards; and it could be exercised against the contractor before he surrendered the completion of the contract to the surety company, or against the subrogated surety company after it assumed and took over the completion of the contract as it then stood in the shoes of the contractor as a substitute, with its subrogated rights and contractual obligations as surety. When the sums were deducted and set aside for the laborers and materialmen by the architect as he was authorized to do, acting for the trustees under the contract, this constituted an exercise of the option by the trustees to retain the amount due the laborers and materialmen; and these funds became impressed with a trust, and such sums so retained became payable to the laborers and materialmen, and it was the duty of the trustees to pay over the funds in satisfaction of their claims, under the contract and bond.

6. Equity. *Maxims.*

A court of equity will order that done which ought to have been done.

Appeal from the chancery court, of Jones county.

G. C. Tann, Chancellor.

Bill of interpleader by the board of trustees of the South Mississippi Charity Hospital against the United States Fidelity & Guaranty Company, of Baltimore, Maryland, the Marathon Lumber Company and others. From a decree in favor of the Marathon Lumber Company and others, the United States Fidelity & Guaranty Company of Baltimore, Maryland, and others appeal, affirmed.

*Watkins & Watkins,* for appellant.

Now, the law is well settled in cases of this character that the surety was not, by implication, liable for

the materials furnished by the appellees; such liability could only grow out of express contract, and nothing could be added to the contract by inference or construction.

The question is, therefore, squarely presented as to whether or not the bond in this case actually bound the surety to pay the claims for labor and material used in the prosecution of the work. Our position is that such was not the case, that no such bond was ever given; that a stipulation contained in the proposals for bidders providing that the successful bidder would give a bond, conditioned upon the payment of claims of materialmen falls short of creating an obligation upon the part of the successful bidder to become so liable. In other words, something else was necessary in order to render the surety liable. The proposal did not, *ipso facto*, make the bond liable, but provided that the successful bidder should thereafter enter into a contract to be and become liable, which was not done in this case.

Our position is that after the Burke Construction Company became the successful bidder, the owner of the building was under no duty to require such bond to be given; had a perfect right to waive it, and did waive that requirement in the proposal, by not exacting from the Burke Construction Company and its surety an obligation, in express terms, to pay and satisfy claims for labor and material. In this connection we are well fortified by authorities, and will direct the attention of the court thereto. 4 Elliott on Contracts, par. 3798; *Electric Appliances Co.* v. *U. S. Fidelity & Guaranty Co.*, 53 L. R. A. (O. S.) 609; *City of Stirling* v. *Wolfe,* (Ill.), 45 N. E. 218.

It is, of course, well established that an agreement upon the part of a contractor to furnish all labor and material used in the erection of a building does not impose liability upon his surety for the claims of materialmen.

806 U. S. Fid. & Guar. Co. v. Lbr. Co. [Sup. Ct.

Brief for appellant. [119 Miss.

In addition to the above cases, see the case of *Searles v. City of Flora,* (Ill.), 80 N. E. 98. The same is held in the case of *Townsend* v. *Cleveland Fire Proof Co.,* (Ind.), 47 N. E. 707.

In the case of *Greenfield Lbr. Co.* v. *Parker,* (Ind.), 65 N. E. 747, it is held that in order to entitle a person to remedy against the surety in a contractor's bond for materials furnished, the bond, or at least, the contract, must contain an express provision to pay for all materials furnished, in such language or from that the failure of the contractor to pay for materials will constitute a breach of the condition of the bond.

And in the case of *Jones Lumber Co.* v. *Villegas* (Tex.), 28 S. W. 558, it is held that the obligation of the contractor to furnish all material and labor used in construction of the building will not render the surety liable for such labor and material. The same is held in the case of *Montgomery* v. *Rief* (Utah), 50 Pac. 623.

We again insist that there is no obligation in this case upon the part of the surety to pay and satisfy the claims of materialmen. Of course, the principal is liable therefor, because he contracted the obligation, but we mean by virtue of the bond. As illustrating the contention which we are making, that the mere provision in the proposal and specifications that the successful bidder should give a bond conditioned for the payment of all claims for labor and materialmen is not covered by the bond in question, we cite the very recent case of *Nick Peay Construction Co.* v. *Miller* (Ark.), 139 S. W. 1107.

Therefore, we say in this case that while the proposals for specifications became part of the contract, they were intended to furnish a guide as to the kind and quality of the work to be performed; and, in addition thereto, contained no express obligation that the bond should become liable for the claims of laborers and materialmen, but only contained the stipulation that

the successful bidder would therafter, by giving bond become so liable, which was never done. Therefore, we have in this case no express obligation upon the part of the surety to pay the obligations of appellees.

We direct the attention of the court to the fact that appellees have cited no case upholding their theory. The only case cited by them is the *National Surety Company* v. *Hall-Miller Decorating Co.,* 104 Miss. 46 L. R. A. (N. S.) 325. The bond in that case contained the following condition: ''The National Surety Company of New York as surety are held and firmly bound unto the board of trustees, state Charity Hospital, Jackson, Mississippi, and all subcontractors, workmen, laborers, mechanics and furnishers of material jointly, as their interest may appear, and as hereinafter set forth, in the full sum of twenty-five thousand dollars, the bond being conditioned as follows: ''Now, the condition of the foregoing obligation is such that if the said Reusch Contracting Company shall well and faithfully execute and perform all of the obligations undertaken by him in the foregoing contract, and shall pay all subcontractors, workmen, laborers, mechanics and furnishers of material whom he shall employ under his said contract, then, and in that event, this obligation shall become void; otherwise, it shall be and remain in full force and effect.''

It will be noted that the bond in that case contained a direct and express promise upon the part of the surety to pay such claims. Neither the bond nor the contract in this case contains any such promise or undertaking, the only reference thereto being the stipulation contained in the proposals and specifications that the successful bidder should enter into such a contract and we respectfully submit that such a stipulation falls far short of entering into an enforceable contract against the surety for the payment of the claims of laborers and materialmen. *National Surety Co.* v. *Hall-Miller Decorating Co.,* 104 Miss.—.

For your honors to hold that the surety in this case had contracted to become liable for the claims for material in this case, would be for the court to make a contract which the parties themselves have never made. The court must bear in mind that all the stipulations contained in the proposal and in the contract were primarily for the benefit of the owner. The owner is not complaining, and has never complained that the bond did not contain the stipulations provided in the proposal.

In respect to the argument of counsel' for appellees in regard to that provision in the contract providing for retention of fifteen per cent. of the fund, and for payment of any proven claims for labor and material, we have fully argued that this was an option to be exercised by the owner which was never exercised. Never having been exercised by the owner, the court cannot exercise the option for it, we could add nothing to our original argument, thereupon.

In response to the argument of counsel for appellees as to the peculiar equities which arise in their favor by reason of the fact that material furnished by them went into the building, we call the attention of the court to the testimony of the architect, Mr. Kramer, which shows that the Burke Construction Company was paid in the May estimate for all material on the ground when the contractor abandoned the contract. In other words, not only was the material sold to the Burke Construction Company on credit, but the Burke Construction Company received credit for the identical material in the May estimate. Certainly, the appellees, can have no further claim for the material; and in reference to the rentention that was the time for the board of trustees to hold out of the estimate for the benefit of laborers and materialmen. Notice however, was not even given to the Board of Trustees.

Notice was not given to the architect by the appellees until long after the indemnitors had taken

charge and until long after payment had been made to the contractor on the May estimate. After the May estimate, the contractor never earned anything, and there could be no retention out of payments earned by the indemnitors except for material furnished by them. But not only did the owner not retain anything, but the owner paid the whole matter into court, subject to adjudication by the court. It would certainly be the essence of injustice, if our position is correct, to hold that the surety is now liable for the claims of laborers and materialmen by reason of its express contract, to give the appellees money which the indemnitors earned after the abandonment of the contract by the contractor. It is very significant that appellee's counsel cite no authority in support of their contention.

We respectfully submit that the case should be reversed and decree entered in favor of the appellant.

*Deavours & Hilborn,* for appellee.

It is conceded that the subject-matter of this contract having been public building that appellees had no lien whatever upon the property. Undoubtedly being well aware of this fact, and being desirous of protecting those who might furnish material or perform labor in the construction of the hospital building. The board of trustees very wisely had inserted in the contract an express, clear and unambiguous provision, as set out in full in the statement of facts, to protect the materialman and laborers. A case almost identical with this is *Surety Co.* v. *Decorating Co.,* 104 Miss. 626.

In our opinion, all the contentions of appellants in this cause, have heretofore been settled by the courts of this state in favor of appellees. Counsel in their brief have cited numerous decisions from other states, which we will attempt to show a little later on in this brief, are not at all in point. The case of *National Surety*

*Co.* v. *Hall-Miller Decorating Co.,* 104 Miss. 626, 61 So. 700, in our opinion is conclusive of appellees' favor.

Under point two, in their brief, counsel say speaking of the bond in question in this cause: There is no obligation therein contained requiring the contractor to pay and satisfy claims for labor and matrial. Counsel undoubtedly did not make this statement seriously or either did not read the plain, unambiguous provision of the contract and bond this will show that counsel have unintentionally fallen into error.

Counsel further contend in their brief, that the clause in the contract merely gave the owner the option of holding out a portion of the fund to protect laborers and materialmen, and that this option not having been exercised by the board of trustees, the owner of the building, in making settlement for the month of May, then it could not afterwards exercise this option and retain the funds in question. Counsel in support of this contention made a long and labored argument in their brief, attempting to show that because this option was not exercised by the board of trustees, in making settlement for the month of May, then it had no further right to do so. It is true that this option was not exercised by the board of trustees before Burke Construction Company went into bankruptcy, but it is also true that the board of trustees had no notice of the fact that these claims were unpaid, and not being prophets or seers, they could not foresee that Burkes Construction Company would go into bankruptcy. In making the contract, however, to provide against just such happenings, they inserted in the contract a plain provision that in our judgment completely answers the contention of counsel. "Then the owners may, at their option, retain out of any payment then due, or thereafter to become due, the said contractor, the amount sufficient to completely satisfy said laborer and said materialman, or either of them."

Therefore, it appears to us that counsel in their brief have somehow forgotten, or overlooked the plain provisions of the contract itself. Did the board of trustees have a legal right to insert this provision in the contract? This court has decided that it undoubtedly had that power. Then with this plain provision staring them in the face, we do not see how counsel can seriously make the contention that because this option was not exercised at one particular time, then the board of trustees had no further power to do so.

The undisputed evidence in this case shows that appellees, when the contractor failed to promptly pay them, following the provisions of the contract, presented their claims to the architect, who was representing, and acting for and on behalf of the board of trustees, who promptly approved their claims, and deducted the amount from the next estimates after their presentation, and reserved funds to pay this amount and set the funds aside for this purpose, and that the board of trustees would have paid these amounts to appellees but for the demand of appellants that they had a superior right thereto.

The uncontradicted evidence further shows that a considerable portion of the material so furnished by the materialmen, appellees herein, was actually used by appellants, after they undertook to complete the building, in the construction thereof. And yet, even after they used the material, in an endeavor to complete the building, and had received the full benefit thereof, they come into court and by some sort of legal legerdemain insist that they have a superior equity to the fund in question; that they can take the material of appellees and can convert it to their own use, and receive the benefit thereof; and then say, in the face of their solemn bond, and their express agreement, that the appellees must lose what they put into the building, in order that appellants, who seem to assume the attitude in this litigation that they are the favorite children of

the law, might not be compelled to carry out their contract. We desire to call the attention of the court to the case of *City and County of Denver* v. *J. B. Hindry*, 11 L. R. A. (N. S.), page 1028.

We will now examine the principal authorities cited by counsel in their brief. The first case is that of the *City of St. Louis* v. *O'Neil Lumber Co.*, 42 Mo. App. 586. A reading of this case will demonstrate beyond doubt that it is not in conflict with the appellees' theory of the case at bar. In the case cited by counsel, the city authorities had not set apart, or attempted to set apart, for the payment of subcontractors, or materialmen, any portion of the funds; in the case at bar, the fund in question was set apart and reserved for the laborers and materialmen. In order to show more clearly that this case is really in favor of appellees, we quote from the opinion:

"In the case cited, the representatives of the board and the city had exercised the power conferred to set apart for the benefit of the subcontractors and materialmen, the money due to the contractors. This action on the part of these authorities was taken before the plaintiffs instituted their suit; hence, the court held that the funds in the hands of the board and the city had been impressed with a trust in favor of the subcontractors and materialmen, and that the action taken by these authorities was in effect an equitable assignment of the funds for the benefit of all subcontractors, materialmen, and laborers in porportion to the amount of their respective claims. In the present case we have no such state of facts. It is not pretended that the city authorities in any manner set apart, or attempted to set apart, for the payment of the subcontractors, or materialmen, any portion of the money earned by McLane." To read the above quotation is sufficient to show that it is no sort of authority in support of appellants' contention.

Counsel next cite 27 Cyc. page 317, quoting a part of subdivision C on said page. Counsel, however, omitted the latter part of said subdivision C. which reads as follows:: "But where a state retains a fund due contractors for public work, under a statute providing that when public works are to be contracted, the state shall obtain sufficient security for the payment, by the contractor, for all material used, one who has furnished material may hold it answerable."

Our court has held in *Surety Company* v. *Decorating Company*, that independent of a statute the state may make such a provision. Therefore, it would appear that this authority is not in conflict with the contention of appellees in this cause.

The next case is that of *Getty* v. *Pennsylvania Inst.* (Pa.), 45 Atl. 33. In that case the contract was undoubtedly different from the one in this cause. Really this case is not at war with our contention, as will be readily observed by reference to this significant statement of the court: "If the contract had provided that on the failure of the principal contractors to deliver the written acknowledgment specified, the money should be withheld from them for the benefit of all the subcontractors who had not been paid, it might have been forcibly argued that such provisions constitute an equitable assignment of the fund for their benefit. But this is not the contract."

It is very evident from reading this statement that the contracts are entirely different and in all probability if the contract in the case cited had been the same as the one in the case at bar, that the court would have upheld our contention.

Counsel next cites *Peckhammer & Co.* v. *Williams*, 77 Miss. 824. The facts in this case and the case at bar are materially different. The contracts are not at all alike. We, therefore, submit that it is not in point. The same thing can be said, we think, of the case of *Spengler* v. *Lumber Co.*, 94 Miss. 780.

The cases of *Strong* v. *Krebbs,* 63 Miss. 338; and *Richardson and May* v. *McLaurin,* 69 Miss. 70, we submit, bear no resemblance whatever to the case at bar.

Counsel in their brief, have written much of the doctrine of subrogation, in a strained effort to show that they have a superior right to this fund by virtue of this doctrine.

What would entitle appellants to the benefit of subrogation? Is it some special benefit or right conferred upon them regardless of their actions in the premises? Are they permitted to invoke that equitable doctrine, when they have not themselves come into court with clean hands?

It is elementary law, we submit, that before they can invoke this doctrine, that they must pay the debt of their principal, and carry out the terms of their agreement. Counsel undoubtedly do not contend that appellants can invoke this doctrine without having paid the debts of the principal under the terms of the contract.

Yet, they have only partially paid the debts of the principal, and only partially carried out the terms of their agreement. We submit until they have fully discharged the obligation of their principal, under the contract, and paid his debts, they cannot invoke this doctrine and be entitled to a superior equity to the fund in question.

"A surety who has paid the debt of the principal is at once subrogated to all the rights, remedies, securities, liens and equities of the creditor, for the purpose of obtaining his reimbursement from the principal debtor." 37 Cyc., page 402; 37 Cyc., page 406; 37 Cyc., page 408; See. also, 6 A. and E. Ann. Cases page 204, and cases cited thereunder.

Counsel cite with considerable confidence, as the leading case in this country upon the subject, the case of *Prairie State National Bank* v. *United States,* 41 Law Ed. 412. We have carefully read this case and do

not think it is at all in point. By reference to the provision in the contract in question, found on page 413, it will be readily seen that it is wholly unlike the provision of the contract in issue here. There is no provision for the payment of laborers and materialmen, or for the retention of a part of the contract price for the protection of laborers and materialmen. The contest is between a bank for moneys advanced to the contractor without the surety's knowledge before he began to complete the work, and the surety company, an entirely different question to the one in this case.

Counsel next cite *Reid* v. *Pauly,* C. C. A. 9th Circuit, 121 Feb. 652. This case is not at all in point. A lien judgment was recovered which it became the duty of the contractor to satisfy. He did not pay the judgment, and his surety did so, and a contest arose over the unexpended balance between the surety, and the assignee. In that case the surety paid the debt, and then invoked the doctrine, of subrogation; in this case, the surety does not pay the debt, but still invokes the doctrine of subrogation.

It will thus be seen in the case, cited, the contractor did not pay in full all persons supplying the labor and material, and that the surety company did make full payment. It was then undoubtedly entitled to invoke this doctrine of subrogation. And when the surety company, in the present case, pays the debts of the contractor, then it, too, will be entitled to these rights and not before.

Counsel next cite the case of *Hardaway* v. *National Surety Co.,* 53 Law Ed. 321. We have read carefully the statement of facts in this case and the opinion of the court. We do not think this case is at all in point. The court merely held that persons who, in view of the financial embarrassment of a contractor, undertook to furnish funds, for which they were to be paid by an assignment of the reserve fund in the hands of the government, and by checks or by payments under the origi-

nal contract, are not subcontractors furnishing labor and material for the fulfillment of the original contract, so as to be entitled to the protection of the bond, conditioned for the prompt payment by the original contractor to all persons supplying them with labor or material. That is not the case presented here.

Counsel cite other authorities, but we will not take them up one by one, as this would unduly lengthen this brief. We submit that a mere casual reading of these authorities will show that they have no applicability to this case. Taking all the facts into consideration as disclosed by the record in this case, what have appellants done that would entitle them to a superior equity over appellees?

"It is said that a person who invokes the doctrine of subrogation must come into court with clean hands. Sheldon, Subrogation, sec. 44; *Milwaukee & M. R. Co.* v. *Soutter,* 80 U. S. —, 13 Wall. 517; *Wilkinson* v. *Babbitt,* 4 Dill. 207; *Guckenheimer* v. *Angevine,* 81 N. Y. 394;" *German Bank of Memphis* v. *United States* 37 Law Ed. 669.

In the contract in issue, appellant, United States Fidelity & Guaranty Company, voluntarily assumed the obligation to see that all the provisions thereof, and not just a part, were faithfully carried out. This contract expressly provides: (A) That all laborers and materialmen furnishing labor and material used in the construction of the building shall be paid.' (B) The method and manner for the payment of said laborers and materialmen; (C) For the reservation of a fund by the board of trustees for the purpose of paying the materialmen and laborers.

The evidence shows that appellees literally complied with the stipulations contained in that contract. Their claims were filed, examined, approved and allowed by the architect for and on behalf of the board of trustees. The amount of their demands was deducted from the estimate and reserved for the purpose of paying

appellees; and would have been paid months ago, but for the protest of appellants, and their claim of a superior equity thereto.

Appellees have, therefore, been compelled to employ counsel and   to contest the right to this fund with appellants, notwithstanding the plain, obvious, unambiguous provisions in the contract for the payment of these claims.  It seems to us that for appellants to prevail in this litigation, it would be necessary to nullify the contract in question, and treat the solemn bond of appellants as a mere scrap of paper.

We respectifully submit that the decree of the lower court should be affirmed.

Holden, J., delivered the opinion of the court.

The Board of Trustees of the South Mississippi Charity Hospital entered into a contract with the Burke Construction Company for the erection of a hospital building at Laurel, authorized by the legislature of the state.  By the terms of the contract, the Burke Construction Company obligated itself to furnish all labor and material for the erection of the building in accordance with certain plans and specifications prepared by an architect, for the sum of forty two thousand four hundred and forty seven dollars and eighty six cents.  The contract, amongst other things, provided that if the contractor should fail, refuse, or neglect to supply sufficient or properly skilled workmen or material in accordance with the terms of the contract, to prosecute the work, the architect, upon giving ten days' notice, should have the right to terminate the contract. Said specifications were expressly made a part of the contract.  The specifications contained the following stipulation:

"11.   Bond: The successful bidder must furnish a satisfactory bond in full amount of the contract price, executed upon the blank form attached, by sureties ac-

119 Miss.—52.

ceptable to the board of trustees and their attorneys, insuring the fulfillment of all the provisions of the contract and covering all guaranties herein provided for and the prompt payment of all persons furnishing labor and materials required in the prosecution of the work. (Transcript, vol. 1, p. 88.)''

Article 8 of the contract provides that the contract price of forty two thousand four hundred and forty seven dollars and eighty six cents is to be paid by the owner to the contractor when the building is completed according to the plans and specifications, and also provides as follows:

''If, however, at any time any laborer or materialman shall establish to the satisfaction of the architect, that said contractor is owing said laborer for labor performed in said building, or owing said materialman for materials furnished on the ground, which material has been accepted by said contractor, and said architect is convinced that said contractor is liable, to the said laborer or materialman, for said sum or sums claimed, then the owner may, at their option, retain out of any payments then due, or thereafter to become due the said contractor, the amount sufficient to completely satisfy said laborer and said materialman, or either of them. Should there prove to be any such claims after all payments are made, the contractor shall refund to the owners all moneys that they later may pay in discharge of any claim any laborer or materialman may have for the labor performed in the building, or material furnished on the ground and accepted by said contractor, and for which said contractor has not paid, and any expense the owners may incur in ascertaining the correctness of said claims, shall be borne by said contractor, and the said contractor and his sureties on his bond shall be liable for all sums so paid by the said owners. The remaining fifteen per cent. due said contractor on said contract, less any deduc-

tions hereinbefore provided for, shall be paid said contractor when said building is accepted by said owners."

The contractor gave bond for the faithful performance of the foregoing contract, in an amount equal to the contract price for the construction of the building; said bond being executed and furnished by the appellant surety company, the United States Fidelity & Guaranty Company. Amongst other provisions, the bond contains the following:

"Whereas, the said principal has entered into a certain written contract bearing date of the 27th day of February, 1917, with the said Board of Trustees, South Mississippi Charity Hospital, Laurel, Mississippi, to do and perform all things contemplated by said contract together with all its terms, covenants and conditions, specifications and stipulations incorporated herein, are made to form a part hereof as fully and ample to all intents and purposes as if said contract was recited herein."

The bond further stipulates that:

"Provided that if the said principal shall fail to comply with all the conditions of said contract to such an extent that same shall be forfeited, then the said surety shall have the right and privilege to assume said contract and to sublet or complete the same, whichever said surety shall elect to do, provided it is done in accordance with said contract; provided further that in the event of any breach of conditions of this bond, said surety shall be subrogated to all rights and properties of said principal arising out of said contract, and any or all moneys and properties at that time due and payable, or that may hereafter become due and payable to the said principal under and by virtue of said contract, shall be credited upon any claim the Board of Trustees of the South Mississippi Charity Hospital, Laurel, Mississippi, may make upon said surety because of such breach."

In order to induce the appellant United States Fidelity & Guaranty Company to become surety on its bond for the erection and completion of said building, the contractor, Burke Construction Company, signed an agreement of indemnity containing the following stipulations:

"And for the better protection of the said company, we do, as of the date hereof, hereby assign, transfer and convey to it, the said United States Fidelity & Guaranty Company, all our right, title, and interest in and to all the tools, plant and equipment of every nature and description that we may now or hereafter have upon such work, or in, on or about the site thereof, including as well materials purchased for or chargeable to said contract, which may now be in process of construction, or storage elsewhere, or in transportation to said site, hereby assigning and conveying also all our rights in and to all subcontracts, which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said company, its agents or attorneys, to enter upon and take possession of said tools, plant and equipment, materials and subcontracts, and enforce, use and enjoy such possession upon the following conditions, viz.: This assignment shall be in full force and effect, as the date hereof, should we fail or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in the event of any default upon our part under the said contract.

"In further consideration of the execution of said bond, we do hereby agree, as this date, that the said United States Fidelity & Guaranty Company shall, as surety on said bond, be subrogated to all our rights, privileges and properties as principal and otherwise in said contract, and we do hereby assign, transfer and convey to said Company all the deferred payments, and retain percentages, and any and all moneys and properties that may be due and payable to us at the time of such

breach or default, or that may thereafter become due and payable to us on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such moneys, and the proceeds of such payments and properties, shall be the sole property of the said United States Fidelity & Guaranty Company, and to be by it credited upon any loan, cost, damage, charge and expense sustained or incurred by it as above under its bond or suretyship.''

After these obligations had been entered into between the parties, the contractor, the Burke Construction Company, undertook and proceeded to construct said building in accordance with the contract, but failed to do so and was adjudged a bankrupt while the building was far from being completed, and thereafter made no effort to pay the claims for labor and material used in the building or to complete the building; whereupon the appellant surety company, through its individual indemnitors, whom it is unnecessary to mention in this connection because their rights are measured by those of the surety company, took over the performance of the contract of the Burke Construction Company together with all its rights and contractual obligations, and proceeded to, and did, complete the building according to the terms of the contract and the bond executed for the faithful performance of the contract, at a loss of about six thousand dollars, that is the construction of the building cost this amount more than the contract price of forty two thousand four hundred and forty seven dollars and eighty six cents.

The appellees, the Marathon Lumber Company and others, furnished labor and material in the construction of said building at the instance of the contractor, the Burke Construction Company, before it went into bankruptcy. These claims, amounting to several thousand dollars, were presented for payment to the appellant United States Fidelity & Guaranty Company, and pay-

ment was refused. Appellees then presented their claims properly itemized and sworn to, to the said architect employed by the Board of Trustees in making the plans and specifications and in the supervision and construction of the hospital building. Appellees established to the satisfaction of the architect that the said contractor, Burke Construction Company, was owing said laborors for labor performed in said building and was indebeted to said materialmen for material furnished on the grounds to the contractor and used in the construction of the building, and the said architect, acting for the Board of Trustees as provided in article 8 of the contract, deducted and retained the amount of said sums from the estimate or balance due appellants sufficient to pay and for the purpose of paying said claims in accordance with the terms of the contract. This amount, six thousand four hundred and fifty two dollars and ninety-two cents, deducted and retained by the trustees, was paid into court with their original bill of interpleader herein.

After said amount was paid into court by the trustees with its bill of interpleader the appellant the United States Fidelity & Guaranty Company, and its said invidual indemnitors, claimed a considerable loss on account of the completion of the construction of said hospital and insisted that they had a superior right and equity in and to the funds so retained by the trustees, and demanded payment of said sum to them in order to reduce their losses. Appellees who had furnished the material and labor to the contractor, Burke Construction Company, in the construction of the building, also claimed an equitable and legal right to these funds in satisfaction of their several claims. Accordingly, the appellants and appellees, in answer to the bill of interpleader filed by the Board of Trustees, propounded their respective claims to said fund.

After a full hearing of the cause before the chancellor, the entire fund in the hands of the Board of Trustees

was awarded to appellees in satisfaction of their respective claims for labor and material furnished the contractor in the construction of the building. This appeal comes from that decree.

Several questions are presented in this appeal none of which we think are necessary for us to decide, except one, and that is whether or. not the appellant United States Fidelity & Guaranty Company undertook and obligated itself by its surety bond to pay the claims here in question for labor and material furnished the contractor in the construction of the building.

The owner of the building in this case being the state, no lien for labor and material furnished attached to the building, and therefore the funds in the hands of the state agents, and Board of Trustees, cannot be applied to the payment of the labor and material claims unless authority for doing so is found in the contract executed by the contractor or in the bond furnished by the appellant bonding company.

The case of *National Surety Co.* v. *Decorating Co.*, 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325, is cited as authority by counsel for the appellee. That decision is not important here, except that it holds a valid provision may be made in a surety bond to secure the payment for labor and material furnished in the construction of a state building. That question does not arise in the case before us, but the sharp inquiry now is whether the appellant bonding company undertook and obligated itself by the bond and contract to pay and satisfy the claims for labor and material furnished to and used by the contractor in the construction of the hospital building.

In *National Surety Co.* v. *Decorating Co., supra,* the bond there expressly provided that claims for material and labor furnished were to be paid by the surety company should the contractor fail to do so. But the the contract and bond in the instant case do not contain the same express stipulation. However, the contract here,

824    U. S. Fid. & Guar. Co. *v.* Lbr. Co. [Sup. Ct.

Opinion of the court.                    [119 Miss.

the performance of which is secured by the bond, does provide a method of securing and paying claims for labor and material furnished in the construction of the building. If this method provided is sufficiently definite and comes within the obligation of the bond, we see no reason to question its binding force.

The main contentions of the appellants are: That under the provisions of the bond, upon failure of the contractor, the appellants were subrogated to all the rights of the contractor and the owners of the building; that in view of the separate assignment of all rights by the contractor to the surety company, and its rights by subrogation, the surety company's equitable claim to the fund remaining in the hands of the Board of Trustees is superior to that of the claims for labor and material furnished; that the appellants by subrogation and assignment are entitled to these funds as well as all other rights and property belonging to the contractor; that here was no obligation upon the part of the surety company to satisfy the claims for labor or material. In other words, it is the contention of the appellants that the appellee claimants sold and furnished the material and labor to the contractor, and appellees having no lien upon the building, and there being no surety obligation upon the part of the appellants to pay any of these claims, the funds in the hands of the Board of Trustees legally and equitably belong to the appellants, and that the claimants merely have an action of debt against the contractor who went into bankruptcy.

We do not think the position of the appellants is maintainable. The specifications required the successful bidder, who was the Burke Construction Company, to furnish a satisfactory bond to insure the fulfilment of all of the provisions of the contract and the payment of all persons furnishing labor and materials required in the construction of the building. The specifications alone, possibly, would not be sufficient to hold the

appellants liable here; but when considered in connection with the express stipulation in article 8 of the contract, as quoted above, for the fulfillment and performance of which the bond was executed, it reasonably appears that the appellant surety company undertook and obligated itself to allow and secure the payment of any claim for labor performed or materials furnished the contractor in the construction of the building when such claims were established to the satisfaction of the architect, and sufficient funds to pay same were retained out of any amount due the contractor or its substitute, the subrogated surety company.

The method of securing and paying the claims for labor and material furnished, as set out above in article 8 of the contract, seems to be plain and simple. These claims were esablished to the satisfaction of the architect, and the aggregate amount of them was retained out of the amount due the contractor, or due the substituted surety, in the hands of the Board of Trustees, and this is the sum that was paid into court with the bill of interpleader. It is true the surety company was subrogated to the rights of the owner and contractor, but it also assumed the contractor's burdens imposed by the contract. It agreed, as the subrogated successor of the contractor, to do those things which the contractor would have been bound to do in fulfilling the contract.

The bond having been given to secure the performance of each and every covenant of the contract, one of which was that the amounts due for labor and material furnished might be deducted, retained, and paid by the Board of Trustees at any time and out of any funds due the contractor during the period of the contract, upon approval of the architect, it was proper to deduct the amounts due appellees for labor and material furnished to the contractor in the construction of the building, out of any funds due the contractor or its substitute, the subrogated surety company. The appellees

826    U. S. Fid. & Guar. Co. v. Lbr. Co. [Sup. Ct.

Opinion of the court.    [119 Miss.

certainly have a right, at least against any contract funds retained through the architect, in the hands of the trustees, which is, in effect, a right against the surety company under the bond securing the performance of the contract, because the application of the funds to the payment of the appellees' claims must necessarily result in their loss to the appellant surety company.

But the appellants seek to avoid the above unfavorable construction and application of article 8 of the contract upon the ground that the right of the trustees to "retain out of any payments due or thereafter to become due the contractor an amount sufficient to completely satisfy said laborers or materialmen" is optional and discretionary, which option was not exercised by the trustees against the contractor before default, nor against funds due the contractor, or against the surety company. It will be observed that the trustees could exercise the option at any time while the building was in course of construction or afterwards; and we think it could be exercised against the contractor before he surrendered the completion of the contract to the surety company, or against the subrogated surety company after it assumed and took over the completion of the contract, as it then stood in the shoes of the contractor, as a substitute, with its subrogated rights and contractual obligations of surety. When the sums were deduced and set aside for appellees by the architect as he was authorized to do, acting for the trustees under the contract, this constituted an exercise of the option by the trustees to retain the amount due appellee materialmen; and these funds became impressed with a trust; and, this being true, it follows that the sums so retained or set aside became payable to appellees, and it was the plain duty of the trustee to pay over the funds in satisfaction of the claims of appellees under the contract and bond. A court of equity will order

March, 1919] U. S. Fid. & Guar. Co. *v.* Lbr. Co.     827

119 Miss.]                    Opinion of the court.

that done which ought to have been done by either of the parties.

The stipulation in article 8 as to claims for material and labor provides that: ''The contractor and its sureties on its bond shall be liable for all sums so paid by the said owners.''

Now, we think, it is equitable and just that before the appellant surety company can claim the funds in the hands of the Board of Trustees by right of subrogation it must first satisfy its obligations under the contract and bond, and allow the payment of the amounts due the appellees for labor and material furnished the contractor for the building.

The appellant surety company can claim nothing by its separate assignment from the contractor which would be inconsistent with its obligations under its bond, and therefore it is left to stand alone here upon its right of subrogation. It simply stands as a substitute in the shoes of the contractor, with no greater rights and must comply with the terms of the contract for the defaulting contractor. And the contractor agreed that any sums of money due him by the owner of the building growing out of the contract might be retained and applied to the payment of claims for labor and material furnished whenever such claims should be established with the architect. These claims having been established and approved, and the amounts having been retained out of the payments due the contractor according to the contract, the contractor could not complain, and therefore the surety company, having the same rights only that the contractor had, cannot complain at the allowance and payment of these claims.

The decree of the lower court is affirmed.

*Affirmed.*