JACKSON LUMBER Co. *v.* MOSELEY *et al.*

(Division A. Dec. 14, 1942.)

[11 So. (2d) 199. No. 35112.]

Lotterhos, Travis & Dunn, of Jackson, for appellant.

**Watkins & Eager**, of Jackson, for appellee, Maryland Casualty Company.

**Creekmore & Creekmore**, of Jackson, for appellee, Niles Moseley.

Argued orally by **Fred Lotterhos**, for appellant, and by **W. H. Watkins**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

This is a contest between appellant lumber company, as assignee under a building contract, and Maryland Casualty Company, as surety on such contract, over a balance owing by Niles Moseley under the contract, which balance, under bill of interpleader, Moseley has paid into court. Appellant, by cross-bill, also seeks a personal decree against Moseley. The lower court awarded the money to the surety company and denied the personal decree, from which the lumber company appeals.

On October 3, 1940, Tom B. Scott, by written contract, agreed to construct for Moseley, according to designated drawings and specifications, an apartment house in the City of Jackson, Mississippi, furnishing all labor and materials, for $60,500, subject to additions and deductions as provided in the contract. The contract contains these provisions:

"Article 4—Progress Payments: The owner shall make payments on account of the Contract as provided therein, as follows:

"On or about the first & fifteenth day of each month eighty-five per cent of the value, based on the contract prices, of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the first and fifteenth day of that month, as estimated

by the Architect, less the aggregate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to ninety per cent of the contract price.

"Article 5. Acceptance and Final Payment: Final payment shall be due fifteen days after substantial completion of the work provided the work be then fully completed and the contract fully performed.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the contract and the contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the contractor, and noted in said final certificate, is due and payable.

"Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

Maryland Casualty Company executed a bond guaranteeing the faithful performance of the contract by Scott, and to hold Moseley harmless from the contractor's failure to so perform and to "promptly make payment to all persons supplying labor or materials—" to the contractor, making the construction contract a part of the bond.

The application for the bond contains this provision: "In the event of claim or default under the bond (s) herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bond (s) . . . all payments due or to become due under the contract covered by the bond (s) herein applied for, shall be paid to the Company—and this covenant shall operate as an assignment thereof

and the residue, if any, after reimbursing the Company as aforesaid, shall be paid to the undersigned after all liability of the Company has ceased to exist under the said bond (s), and the Company shall at its option be subrogated to all rights, properties and interest of the undersigned in said contract—."

On January 28, 1941, the surety company mailed to Moseley a copy of this application.

In the meantime, and on November 20th, 1940, Scott, to secure an existing indebtedness of five thousand dollars to Jackson Lumber Company, appellant, evidenced by a promissory note, and also to secure future advances, not to exceed five thousand dollars at any one time, for use by Moseley in the construction of the Moseley apartment house, assigned, by writing, to said lumber company "all sums of money due and to become due from Niles Moseley or his assigns to the assignor in connection with or in any manner growing or proceeding from said construction contract," and directed that all checks by Moseley should be made to the lumber company and Scott jointly and empowered the lumber company to endorse said checks in the name and on behalf of Scott, with the further provision "All amounts so paid and delivered to the assignees shall be considered as payment to the assignor." But "This assignment is made subject to the right of any bonding or surety company, that may be involved, to the retained percentage of monies to become due under and by virtue of the terms of said construction contract."

On November 20, 1940, Moseley acknowledged receipt of notice of the assignment.

Scott proceeded with the construction. The lumber company had advanced to him to June 14, 1941, payrolls aggregating $23,138.99, all of which had been repaid except $733.99, which was advanced on that date, and $1100 had been paid on the note. However, to that date Moseley had made progress payments to the contractor ·

and appellant jointly aggregating $49,755.41, appellant permitting Scott to receive and use from such progress payments $27,350.41.

On June 18, 1941, Scott wrote Moseley "I have made default in completing contract for the construction of apartment house on North State Street. I will be unable to meet the payrolls due Saturday and request you to do so. Upon the advancement of future payrolls, I will superintend the completion of the contract and co-operate with you to the fullest extent." Moseley immediately notified the surety and lumber company of receipt of this letter. The net result of the correspondence was that the lumber company and the surety agreed to the foregoing arrangement, the lumber company insisting that Moseley advance the payrolls from retained percentages and the surety that he advance them from the earned progress payments. The work proceeded to completion under that arrangement. The lumber company made no further advances to Scott. On the date of that letter from Scott all materials had been purchased and had either been installed or were on the ground. However, there were unpaid claims for such materials aggregating $18,084.54. Moseley thereafter paid out $5,801.28 for payrolls to complete the job. The completed work was accepted July 18, 1941. The total cost thereof, after adjusting additions and deductions, turned out to be $61,144.55. Moseley gave due notice by publication to laborers and materialmen as the statute requires. Claims for materials to the amount of $18,084.54 were filed, including one of appellant for $5,523.55, all of which the surety paid.

The payments Moseley had made to June 18, plus the amount he thereafter made for payrolls, left in his hands an unpaid balance of $5,791.66 of the total cost of the job, subject to some further slight adjustments, about which there is no controversy here.

Aside from whether the contractor has the legal right to assign the retained percentages, without the consent of the owner and the surety, the assignment in this case expressly excepted the retained percentages. The question, therefore, which determines the right of the assignee or the surety to this fund is whether it is composed of unpaid earned progress, or installment payments, or of retained percentages; if the former, it is the property of the assignee lumber company; if the latter, it belongs to the surety. First National Bank v. Monroe County, 131 Miss. 828, 95 So. 726, 727; Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1. There is no clear, specific proof as to the nature of the fund; no proof of a method of bookkeeping, or charges and credits, or other handling, by the owner under which he set up separate funds, or entities. He simply retained the money to secure fulfillment of the contract, which is the purpose of retained percentages. The balance retained by Moseley, after advancing payrolls to complete the contract, is less than fifteen percent of the amount which had been paid the contractor on June 18th and less than ten percent of the total cost. In other words, the amount retained never equaled the required retained percentage, whether considered as fifteen percent before, or ten percent after, substantial completion of the work, as required by the construction contract. Again, the required retainage is for the mutual benefit and protection of the owner and the surety. Mississippi Fire Ins. Co. v. Evans, 153 Miss. 635, 120 So. 738; Southern Surety Co. v. Merchants' & Farmers' Bank, 203 Ind. 173, 176 N. E. 846, 179 N. E. 327; Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; United States F. & G. Co. v. Marathon Lumber Co., 119 Miss. 802, 81 So. 492; Pratt Lumber Co. v. T. H. Gill Co. (D. C. N. C.), 278 F. 783; Pickard v. Shantz, 70 Miss. 381, 12 So. 544; American Bank & Trust Co. v. Langston, 180 Ark. 643, 22 S. W. (2d) 381; Annotation, 76 A. L. R. 917, and 9 Am.

Jur., page 73, Sec. 115. If the owner, without consent of the surety, pays out the retainage he is liable to the surety pro tanto, therefor in some jurisdictions. Central State Bank v. United States F. & G. Co. (5 Cir.), 9 F. (2d) 326; United States F. & G. Co. v. Bank of Brewton (D. C. Ala.), 4 F. Supp. 272; Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412. See Pratt Lumber Co. and Pickard cases, supra. We may reasonably assume, in the absence of proof to the contrary, that the owner would not run the risk of making himself liable to the surety by paying out the retainage over its protest.

The wording of the chancellor's opinion indicates he considered the fund retained percentage. We think that is correct and so find. Having thus held, it follows that the assignee is not entitled to the fund. But there yet remains the question of the right of the surety thereto. In this connection it is said the contractor did not legally breach the contract, and that, therefore, the surety has no right to this money. We think the contractor did breach the contract. This was a three-way arrangement, consisting of the building contract, including the plans and specifications, the bond and the application therefor, with the mutually interdependent obligations and rights therein contained. The contract obligated the contractor not only to go forward and complete the structure but also to pay for all materials and labor therefor. By his letter he notified the owner he was unable to complete the job and could not pay for the labor. We think the owner had the right to conclude that the contractor had failed to fulfill the contract. · It is said in 9 Am. Jur., page 49, Sec. 69, ''In accordance with the rule adopted in a majority of jurisdictions with respect to contracts generally, where a party to a building or construction contract announces his intention not to perform, the other party thereto may treat the contract as broken—.'' Golwitzer v. Hunnell, 201 Iowa 751, 206

N. W. 254; Johnson v. Vogel, 208 Iowa 44, 222 N. W. 864; Schmidt Bros. Construction Co. v. Raymond Y. M. C. A., 180 Iowa 1306, 163 N. W. 458; Brady v. Oliver, 125 Tenn. 595, 147 S. W. 1135, 41 L. R. A. (N. S.) 60, Ann. Cas. 1913C, page 385, note; and Ann. Cas. 1918D, 630, subhead b, and page 632, subhead c.

This being true the owner had the right to take charge of the job or to advance the payrolls under the arrangement hereinbefore set out and deduct such advances from the contract price. By way of illustration, it was said in Tyler Co. v. Laurel Equipment Co., 187 Miss. 590, 192 So. 573, at page 575, "An owner contracts with a builder for what is commonly called a lock and key job in the building of a residence, the gross contract price to be $3,000 on completion; but the contract provides also that the owner shall pay or advance the weekly payroll of the carpenters and laborers employed in the work during its progress. There the owner would be entitled to deduct the payments so made by him, as against an assignee of the contractor, although the latter had attempted to assign the entire gross contract sum of $3,000." In the Golwitzer and Johnson v. Vogel cases, supra, the contractor had refused to proceed with the work but the contract made no provision for the owner to take charge thereof. See also United States F. & G. Co. v. Marathon Lumber Co., 119 Miss. 802, 81 So. 492; Note in Ann. Cas. 1918D, supra, and especially the case of Spicer v. Snyder, 58 Hun. 605, 12 N. Y. S. 744, page 631 of said note, where the owner, under subsequent oral agreement, advanced the payrolls, as was done in this case.

The application provides that if the contractor "fail to fulfill any of the obligations assumed under the said contract," the surety, at its option, shall be "subrogated to all rights, properties and interest" of the contractor in said contract. The construction contract also provides that before the final payment is due by the owner

the architect shall inspect and accept the work and find that it has been completed and that the contract has been "fully performed" and that the entire balance under the contract is due and payable, and so certify to the owner, and that "before issuance of the final certificate the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills, and other indebtedness connected with the work have been paid." No such certificate was, nor could rightfully have been, furnished. The contractor is not entitled to this fund. The surety, having paid more than the amount thereof as a result of the default of the contractor, is entitled thereto by right of subrogation. Canton Exchange Bank v. Yazoo County, supra; Maryland Casualty Co. v. Dulaney Lumber Co. (5 Cir.), 23 F. (2d) 378; Prairie State Bank v. United States, United States F. & G. Co. v. Marathon Lumber Co., both supra; Title Guaranty & Surety Co. v. First National Bank, 94 Wash. 55, 162 P. 23; State v. Schlesinger, 114 Ohio 323, 151 N. E. 177, 179, 45 A. L. R. 371; Note, 76 A. L. R. 917.

It also follows that appellant is not entitled to a decree for any amount against Moseley. The chancellor so held and the cause is, therefore, affirmed.

Affirmed.

**McGehee, J.,** took no part in this decision.