OLIVER CONST. CO. *et al. v.* DANCY *et al.*[*]

(Division B. Jan. 26, 1925.)

[102 So. 568. No. 24521.]

1. HIGHWAYS. *Claimants for labor and material held not to waive protection of contractor's bond by acceptance of duebills from subcontractors.*

Claimants for labor performed and material furnished in construction of public road did not waive protection of contractor's bond

furnished under Laws 1918, chapter 217, by contractor to whom contract was let, by accepting from subcontractors to whom such contractor sublet the contract, duebills constituting merely statements of amounts due for such labor and material.

2. HIGHWAYS.  *Laborers and materialmen protected by contractor's bond though contractor has sublet work to other contractor.*

Contractor to whom contract for construction of public road had been let, and surety on its bond furnished for protection of laborers and materialmen under Laws 1918, chapter 217, could not evade liability under such bond for labor performed and material furnished in construction of road, by subletting work to other contractor.

---

*Headnotes 1. Highways, 29 C. J., section 351; 2. Highways, 29 C. J., section 350 (1926 Anno.).

APPEAL from chancery court of Benton county.
HON. JAS. G. McGOWAN, Chancellor.

Suit by R. F. Dancy and others against the Oliver Construction Company and another. Decree for plaintiffs, and defendants appeal. Affirmed.

*Chas. Lee Crum,* for appellants.

This suit was instituted under chapter 217, Laws of Mississippi, 1918, the first section of which provides that contractors doing public work in this state shall be required to execute a bond to comply with the contract and, also, to pay all persons who furnish labor or materials used in the contract job. The second section provides: That if no suit shall be brought on this bond by the obligee, which in this case is the county of Benton, "within six months from the completion and final settlement of said contract, then any person supplying therein labor or materials shall, upon application and furnishing affidavit to the obligee that such labor or materials have been supplied and payment not been made, be furnished with a certified copy of said contract and bond, upon which he shall have a right of action"

for his claim. The third section provides that such suit "shall not be commenced until after the complete performance of said contract, and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract and not later." It, also, provides that if the contract is abandoned by the contractor that suit may be instituted within one year after the abandoment. "But said time for the institution of said action shall not begin to run until the obligee shall have made said final settlement, or determined said abandonment, and published notice thereof in some newspaper published in said county." The fourth section provides that only one suit shall be brought by such laborers and materialmen, that any one having such claim may intervene, provided the intervention is within the one year. The sixth section provides that the defendants and all persons interested may be made parties by publication.

There are many errors which I think the court below committed in the trial of this case, for there were nineteen complainants at the beginning of this suit, but as the claims of only four of the complainants and interveners were allowed, I shall confine my assignment and arguments to points affecting the trial of these claims alone. The claimants whose claims were allowed are as follows: R. F. Dancy decreed two thousand four hundred seventy six dollars, interest and attorney's fees, E. J. Crawford decreed three hundred five dollars and fifty-five cents, interest and attorney's fees, J. D. Dickerson decreed one hundred eighteen dollars and fifty-nine cents, interest and attorney's fees, J. H. Gresham decreed one hundred twenty one dollars and forty-two cents, interest and attorney's fees.

J. H. Gresham's claim. Mr. Gresham stated that he did nothing towards constructing the road under contract, but that his account was for boarding Lansdale and Ackerman. The itemized account of this claimant was never filed as a part of the pleadings in the case,

and only filed then as an exhibit to his testimony while he was testifying, and was filed over the objection of appellant. Not one item on this entire account could be used as material to build this road and there was not a moment of labor performed on the contract embraced in this account. This account was not filed in time to enable appellant to answer it and to give this claimant a right of trial at the time the case was tried.

J. D. Dickerson's claim. Mr. Dickerson had taken the note of Lansdale and Ackerman, signed by the firm and by each of them, for his account which he says was for boarding hands to the order of Lansdale and Ackerman. His testimony was objected to promptly because the evidence showed that the consideration of the note was neither for labor nor materials used in building the road, but for boarding hands for Lansdale and Ackerman. There is no evidence that these hands so boarded ever did a day's work on this road project, and if they had the right of action in this kind of suit it is confined to "labor and materials used therein." Therefore, Mr. Dickerson's claim should be disallowed for the meritorious reason that it is shown to be for neither labor nor materials used in constructing the road, and the decree as to it should be reversed and his claim dismissed.

E. J. Crawford's claim. This claim consisted of an open account against Lansdale and Ackerman for one hundred sixty two dollars and two cents, and three notes given by Lansdale and Ackerman, aggregating one hundred forty nine dollars and fifty-three cents. This account nor these notes are anywhere set out in the pleadings, except this reference is made to them: "E. J. Crawford, one hundred forty nine dollars and fifty-three cents, with interest at six per cent from June 22, 1921, until paid; open account of E. J. Crawford for one hundred sixty two dollars and two cents." There is no note nor account attached to the bill and until this late hour there has never been either note or itemized account filed in the case either as evidence or as part of

the pleading, and I have never been able to see either the notes or the account. The testimony of Mr. Crawford is incompetent, (1) because there were no notes or accounts on file to authorize his testimony; (2) because he could not say and did not say what the price of his work amounted to; (3) because the other items mentioned by him were neither for material used in the contract nor for labor done on the road. The court below, therefore, erred in refusing to dismiss his claim and I respectfully here ask that the decree in his favor be reversed and his claim dismissed.

R. F. Dancy's claim. The only other claim allowed by the court is that of R. F. Dancy which presents issues different from those just discussed with reference to the other three claims. Appellant, however, contends that as Dancy filed his suit in this case before a final settlement had been made with appellant by the county and before the county had published notice of said settlement as provided for by chapter 217, that this entire proceeding is prematurely instituted and for this reason the decree should be reversed and the entire bill dismissed. In stating this case as to Dancy, I call attention to the facts: (1) Dancy made his contract to do the work here sued for directly with Lansdale and Ackerman, and they became liable to him for payments therefore as agents of an undisclosed principal for whom they were working. That after their agency was disclosed, Dancy had the right to sue either the principal or the agent, but only one, and his election to sue one precludes him from suing the other. (2) That Dancy novated the contract by accepting the notes of Lansdale and Ackerman and releasing appellant. (3) In his declaration and bill, Dancy makes out his account against Lansdale and Ackerman and not against appellant, and Lansdale and Ackerman are made defendants by the same method of process as the appellant is, and all are sued in this proceeding alike. (4) The notes sued on and made exhibits to the pleadings are both

signed by Lansdale and Ackerman and are in terms different from the terms of the account as to dates of payment, attorneys' fees for collection, and rate of interest, and merge the account into the notes, this extinguishing the account for the labor performed and rendering the note the sole evidence of the debt. These notes were given by Lansdale and Ackerman and accepted by Dancy many months after Dancy had learned that appellant was the principal and Lansdale and Ackerman were the agents. (5) That appellant acquiesced in, agreed to, and ratified this novation by ordering on request of Lansdale and Ackerman that the warrant on funds in the treasury of Benton county belonging to Lansdale and Ackerman be paid to J. W. Crawford, a creditor of Lansdale and Ackerman. (6) That many months after Dancy knew that Lansdale and Ackerman were agents of appellant, he elected to interplead in case No. 1501, in the chancery court of Benton county, in which he pursued to final adverse decree the funds in the hands of the county belonging to Lansdale and Ackerman and which they had ordered paid to their creditor J. W. Crawford. In this suit at bar, Dancy is suing Lansdale and Ackerman on notes given by them alleging in the same suit that they are the agent of appellant. The allegations of the bill show that Lansdale and Ackerman are alone liable to Dancy because of the novation and election of Dancy. (7) That at the time of the novation of the account and electing to look to Lansdale and Ackerman alone for payment, appellant had three thousand three hundred seven dollars in the county treasury, the property of Lansdale and Ackerman, but under appellant's control, out of which he could have paid Dancy. But after the novation of the contract and the election of Dancy to look alone to Lansdale and Ackerman, which released appellant from all liability to Dancy, appellant paid out said money to J. W. Crawford, and Dancy is estopped to demand payment from appellant of the claim sued on. (8) The court will note that

the records of the board of supervisors do not show a final settlement of this account between appellant and Benton county, and will, also, take note that appellant is suing Benton county for over two thousand dollars, balance due on its contract. (9) The bill does not allege nor the proof show that the board of supervisors published notice that the contract between it and appellant had been finally settled. It will, also, note that final settlement and publication of notice thereof are conditions precedent to procuring a certificate of the contract and bond of appellant, which are the basis upon which this suit shall be brought, and that final settlement and notice published are, also, jurisdictional facts in this suit that must be alleged and proved.

The two notes given by Lansdale and Ackerman to Dancy, at the time Dancy had full knowledge of all facts as to the relationship of the parties, and ratified by appellant, is a complete novation and merger of the contract liability of Lansdale and Ackerman and Oliver Construction Company to Dancy and the acceptance of the acceptance of the notes by Dancy is in law and in fact a delegation and acceptance of Lansdale and Ackerman to pay the notes and is a release of Oliver Construction Company from its obligation to pay Dancy. For the true relationship of the parties, before this account was novated and merged by the execution of the notes, see section 1, chapter 217, Acts 1918. This statute shows that whenever under the contract Lansdale and Ackerman failed to pay Dancy for his labor that appellant was liable on his bond to do so, and that had appellant paid Dancy that Lansdale and Ackerman as sub-contractors would have been liable to appellant for the amount it had to pay Dancy. In other words, appellant owed Dancy, or would have owed him on the failure of Lansdale and Ackerman to pay him, two thousand four hundred seventy six dollars by virtue of his contract bond, and Lansdale and Ackerman as subcontractors would have owed appellant this amount. Then, when Dancy

elected to look alone to Lansdale and Ackerman by agreement of the parties, appellant was released from liability to Dancy, and this agreement operated to release Lansdale and Ackerman from their contingent liability for this amount to Oliver Construction Company. To show that this was the understanding and agreement, after this arrangement had been perfected, Lansdale and Ackerman ordered the payment of the three thousand three hundred seven dollars, in the hands of the county, due from them to J. W. Crawford, and by order of the appellant, on demand of Lansdale and Ackerman this warrant was turned over to Crawford by appellant.

The law of novation of contracts, such as we are here dealing with, is given in 3 Elliott on Contracts, sec. 1859, from which I quote: "A second mode of discharging an executory contract by agreement of the parties is by a new contract or substituted agreement. This may be expressly substituted for the old contract, or a similar result may be reached where the new contract is inconsistent with the old one; or where new terms are agreed upon, there may result a new contract, consisting of the new terms, together with the terms of the old contract not consistent with the new terms. So a new party may be substituted for an original party by agreement of all." And by section 1867 of the same volume: "A contract may, also, be discharged by a change in the parties thereto, as by the substitution of a new party in place of one of the original parties by agreement of all, altho the terms remain the same. Thus if A is indebted to B in the sum of one hundred dollars, and B. owes C. the same amount, and it is agreed by all that A shall pay C the one hundred dollars, B's indebtedness is extinguished and C may recover such sum from A. This is a species of novation, and it may exist in more complicated forms than the simple form of which the above is an illustration. All must agree, for it requires the consent of the original parties to change the old

contract or their relations to it and extinguish the liability, and of the parties to the new contract to create it. But . such assent may be implied, and such substitution and discharge may arise or be shown by circumstances and the conduct of the parties showing an acquiesence in the change. So it is not necessary, so long as they all finally consent in time, that they all should consent at the same moment.'' *Pugh* v. *Barnes,* 19 So. 370, (Ala.) ; *Adams* v. *Power,* 48 Miss. 450; 29 Cyc. p. 1136-C. In a note in 6 Am. & Eng. Anno. Cas., p. 315, I find the following: ''Where the entire subject-matter is covered, and there· is nothing on the face of the second agreement to show that it is intended to be supplemental to the original agreement, it supercedes and rescinds the original, not as a question of intention, but by operation of law, as a result of steps taken by the parties. And· the existence of these conditions is to be determined by the court.'' Citing: *Stow* v. *Russell,* 36 Ill. 18; *Mather* v. *Butler County,* 28 Iowa 253; *Leffel* v. *Piatt,* 126 Mich. 443; *Bank* v. *Berry,* 52 Me. 295; *Christman* v. *Hodges,* 75 Mo. 414; *McClung,* v. *Whitney,* 82 Mo. App. 625; *Howard* v. *Scott,* 98 Mo. App. 509. From these authorities it appears as· a proposition of law, whether Dancy intended it to be so or not, that by this transaction he novated his account and merged into notes and released appellant from its contract liability to pay the account. As to the effect of this character of novation to release the surety of appellant, I refer the court to the following authorities: *Amer. Iron & Steel Co.* v. *Beal,* 4 Am. & Eng. Anno. Cas. 883, with note to same, beginning on page 884. These authorities show conclusively that the taking of these notes fully releases the National Surety Company from its liability on the contractor's bond, and as the suit was on the bond and the decree was against both principal and surety on the bond, the decree should be reversed and the suit dismissed as to Dancy. *Fanning* v. *Murphy,* 4 Am. & Eng. Anno. Cas. 435.

In this case there can be no question but that Dancy originally had a remedy either against Lansdale and Ackerman, as the undisclosed agents of Oliver Construction Company, with whom Dancy made his contract to do the work, or against the Oliver Construction Company, principal, and in the initial condition of this contract, when Lansdale and Ackerman failed to pay Dancy he could with consistency have instituted his suit against either Lansdale and Ackerman or appellant. But when Dancy exercised his right of election and elected to look to Lansdale and Ackerman, the ones he had actually, traded with and given credit by taking their promissory notes for the account with more favorable terms than the account carried, and by interpleading in the chancery case No. 1501, in which he pursued the funds belonging to Lansdale and Ackerman for the payment of these notes, he is irrevocably bound by his election of rights and remedies, and the fact that he elected to pursue Lansdale and Ackerman necessarily, by operation of law, released Oliver Construction Company from further liability therefor. The laws of the land very clearly settle this as the correct application of the law on election of remedies, as is shown by the following authorities: 15 Cyc. 259, A, p. 261, A., p. 262; *Clausen* v. *Head,* 110 Wis. 405; *Merc. Realty Co.* v. *Stetson,* 120 Iowa, 324; *Seeman* v. *Bandler,* 26 Mich. 372; *Hark* v. *Walter,* Ohio S. & C. Pl. Dec. 409; *Cameron* v. *Hinton,* 92 Tex. 492; *Clark* v. *Erwin,* 72 Miss. 926, 18 So. 419; *French* v. *Davis,* 38 Miss. 176, 177; *Murphy* v. *Hutchinson,* 93 Miss. 643, 48 So. 178. I regard this last-mentioned case as decisive of the case at bar. It is a case of principal and agent as in this case. *Phillips* v. *Cornelius,* 28 So. 871; 20 C. J., p. 2, et seq., and p. 5 of the same authority, under the head of "Necessity of Election;" *Ideal Con. Mac. Co.* v. *N. Y. Nat. Park Bank,* 145 N. Y. 119, and other references under note No. 35; *Fireman's Fund Ins. Co.* v. *Gulf Trans, Co.,* 99 So. 518, 519.

By the conduct of Dancy in agreeing to look alone to Lansdale and Ackerman; novating and merging the account into notes here sued on he has forced appellant who had no power to resist under the law, to honor the order of Lansdale and Ackerman and turn the warrant for three thousand three hundred seven dollars over to J. W. Crawford in payment of an indebtedness that Lansdale and Ackerman owed him. Before Dancy did this appellant could lawfully have held this warrant out of which he would not have paid Dancy, which no doubt he would have done, but now appellant has let this fund go to pay Lansdale and Ackerman's debt and it would be unjust to appellant, and inequitable to now require it to pay Dancy from its individual funds. Dancy is, therefore, estopped by his past conduct as above recited and shown, to recover of appellant in this proceeding.

This suit was prematurely brought because the right of action, nor the right to sue did not accrue until after the obligee, Benton county, had fully settled with and paid appellant all it owed him and published the fact of such settlement in the county paper. As there had been no final settlement and no publication at the time the suit was brought it was instituted prematurely and for this reason the decree should be reversed and the suit dismissed. The court below committed prejudicial error to appellant in requiring it to go into the trial before all the claims of the intervenors had been filed, and the case should have been continued. No part of the claim of either Gresham or Dickerson was for labor or materials used in the road, and only such items are provided to be collected under chapter 217, Acts of 1918, and for these reasons these claims should be dismissed. None of the evidence is competent in support of the claim of E. J. Crawford, because his claim had never been filed with the pleadings. None of the items of his claim are for labor or materials used in the road to construct it, except eight days' labor by him, and the evidence does not show the price of this labor, nor what

it was reasonably worth. The court below from the proof could not possibly determine what the value or price of his eight days work was, and the decree in his favor should now be reversed and his claim dismissed. R. F. Dancy novated his account by merging it into a note which he accepted from Lansdale and Ackerman; elected to sue on these notes in a suit against Lansdale and Ackerman, at a time when he well knew all the facts, and by his conduct estoppel himself to recover from appellant. Therefore, the decree in his favor should be reversed and the entire bill dismissed.

*Chalmers Alexander,* for appellants.

As shown clearly in the able brief by Judge CRUM for Oliver Construction Company in this appeal, neither Crawford nor Gresham nor Dickerson made sufficient proof of their claims. The honorable chancellor below in our opinion erred in rendering decree in favor of these complainants at the time when he dismissed the bill of complaint as to a number of other complainants. Dancy's claim is based on two notes together with account. He had no direct claim on Oliver Construction Company or privity or relationship. Of course, if there be no liability on the part of the Oliver Construction Company the said company's bond cannot be liable. The National Surety Company appears in the case merely as surety for Oliver Construction Company's faithful carrying out of a road contract.

This case is based on chapter 217, Laws of 1918. Whether this statute is unconstitutional we do not discuss. Suffice it to say that it is extremely awkward to a defendant who in one case may be compelled to meet claims based on notes, claims based on open accounts, claims wherein one defense is applicable here and another there. But in any event the burden, of course, rests on each complainant to produce as an exhibit to his claim in court the evidence thereof. Actually in this

case, over a dozen complainants' claims were thrown out as shown of record as not proven. Dancy, complainant, who has recovered decree against the Oliver Construction Company for two thousand four hundred seventy six dollars, lost his right of recovery when he elected to accept note of subcontractors, Lansdale and Ackerman. The notes exhibited by Dancy are notes of Dancy and Ackerman. These parties Lansdale and Ackerman are liable to him on notes, bills payable and he, Dancy, has merged his claim into notes accepted by him. This should release both the Oliver Construction Company and the Surety Company, and certainly the Surety Company. *Fleming* v. *Bordon,* 53 L. R. A. 316; 27 Am. & Eng. Ency. Law (2 Ed.), 505; *Adams v. Power,* 48 Miss. 450; *Bank* v. *Berry,* 52 Me. 295.

While the bill may recite that Lansdale and Ackerman were agents of the Oliver Construction Company it, also, recites that Lansdale and Ackerman represented the Oliver Construction Company "in that they were sub-contractors under the said Oliver Company, having taken the contract to put in the macadamized surface and having sublet the same to said Lansdale and Ackerman." It is shown that the National Surety Company as a surety on a contractual bond is sought to be held liable to Dancy, when the bill recites that the only relationship of the National Surety Company in the case is solely as surety on the bond of the Oliver Construction Company, and that the National Surety Company has no privity of relationship whatever with either Dancy or with Lansdale and Ackerman.

Dancy merged his claim against Lansdale and Ackerman into a note, accepted the note, changed the terms of relationship to that of one subject to the law of notes and choses in action. The National Surety Company under its bond is not liable for subcontractors. The bond of the National Surety Company does not mention sub-contractors. Suretyship is a personal relation. The answer of the Oliver Construction Company

admits that Lansdale and Ackerman were subcontractors, and as subcontractors did subcontract with Dancy for work to be done out of which this claim of Dancy's arises.   The things done by Dancy are as to the Surety Company *res inter alios acta.*   "It is well settled that if the creditor without the assent of the surety, enters into a contract with the principal upon a sufficient consideration to give him an extension of time of payment, for a definite period; or enters into any contract with the principal which in its consequence may have the effect of giving such extension, the surety is released. *Govan* v. *Binford,* 25 Miss. 151.   "Endorsement on a note, dated 5th July, 1852, 'six months time is given on the within note, and interest paid to Jan. 3, 1853,' releases the surety." *Dubuison* v. *Folkes,* 30 Miss. 432.   "Extension of time on a valid agreement, even for one day, during which the creditor could not sue, will release the surety." *Johnson* v. *Planters,* 4 S. & M. 165, 43 Am. Dec. 480.   "It is a familiar rule that if a creditor by positive contract with the principal debtor and without consent of the surety extends the time of payment, he thereby discharges the surety."   21 R. C. L. 1018.   "It is a general rule that where a creditor accepts from a principal debtor without consent of the surety a draft, note, check or promissory note payable at a future date, for the debt, the creditor's right of action is suspended until maturity thereof, and consequently the surety is discharged."   21 R. C. L. 1024.   "Time or forbearance given by a creditor to the principal debtor by an agreement which binds him in law and would bar his action against the debtor, will discharge the surety." *Fleming* v. *Bordon,* 127 N. C. 214.   "Where a creditor takes the bill or note of his debtor payable at a future day, it is an extension of credit and the surety is thereby discharged."   27 Am. & Eng. Ency. Law (2 Ed.)   505. "The rule is well settled that if a creditor or obligee by a valid and binding agreement without assent of the surety gives further time for payment or performance

to the principal debtor, the surety will be discharged."
32 Cyc. 191. "Any contract which in its consequences
may have the effect of giving an extension of time, will
discharge the surety." 32 Cyc. 204. "If a creditor
without the consent of the surety, enters into a contract
with the principal upon a sufficient consideration to give
him an extension of time for a definite period or enters
into a contract with the principal which in its con-
sequence may have the effect of giving such an extension
of time, the surety is released from his engagement."
*Miller* v. *Lewis,* 103 Miss. 598, 60 So. 654. We thus
insist that on bill of complaint alone, Dancy, suing on
notes of Lansdale and Ackerman, an extended obliga-
tion wherein neither Oliver Construction Company nor
National Surety Company are parties, cannot hold the
National Surety Company in any instance.

Our demurrer should have been sustained. It was
duly set down and argued. The bill failed to show any
relationship between Dancy, the largest claimant, and
the Surety Company, whatever. But the bill does show
novation of debt and extension of time of right to sue
such as will in any event release a surety if originally
liable. As to the smaller creditors, they failed to comply
with the law of pleading as regards the profert of their
claims as exhibits to the bill. They were given a rea-
sonable time to do so by order of the court, and no
longer. When the Oliver Construction Company sub-
contracted the work to Lansdale and Ackerman, subcon-
tractors, and when Dancy then contracted under written
contract with them, and later accepted notes, he lost
all claim to hold the National Surety Company, this
being the result of his own neglect or action. Dancy,
although it seems that he did show his contract in evi-
dence, failed to file it as an exhibit to his bill of com-
plaint. It is to be noted that Dancy, J. D. Dickerson,
sued on notes, notes of Lansdale and Ackerman. The
demurrer presented by the National Surety Company to
the bill of complaint, duly set down can be considered

anew in this court. The National Surety Company is entitled to consideration of all defenses on the merits that its principal, the Oliver Construction Company, is entitled to. If the bill does disclose that Dancy and Dickerson having open account claims merged or exchanged them into the more handy and negotiable form of promisory notes signed by Lansdale and Ackerman and thus novated the claims, then under the recitals of the bill and under the law of the land, even if the court should not consider the evidence, the National Surety Company must be released from liability to Dancy and to Dickerson.

*Wall Doxey,* for appellee.

As to appellee, R. F. Dancy, the appellants admit that his account is correct; that he did the work and furnished the materials on Project No. 22; that all pleadings of the said appellee are full and complete; from the very beginning Mr. Dancy gave the proper notices, displayed and filed his itemized exhibits, produced in open court the book of original entry, all showing the sum due him for labor performed and materials furnished on said project, as shown by the pleadings, the proof and the briefs of appellant.

Without discussing at length chapter 217, Laws of 1918, this law was designed and made to protect persons, just as appellee, who had furnished labor and materials for public work for which they had not been paid. This work was done and proceedings were had in strict compliance with this law. Appellants admit all this on the part of R. F. Dancy except they say, "the suit was prematurely brought." Doesn't the records show conclusively the project to have been completed, final estimates and settlements duly made, filed and approved, that the board of supervisors determined the sum of three thousand three hundred seven dollars and nineteen cents was, according to the terms of their contract with

490          Oliver Const. Co. *v.* Dancy.        [Sup. Ct.

Brief for Appellee.        [137 Miss.

appellant, due as a final balance to the Oliver Construction Company, and was not County Warrant No. 173 issued upon the order of said board, same being payable unto Oliver Construction Company, who was the only contractor known to the board of supervisors and being the only one to whom any warrants were ever issued as payments for work done and materials furnished on said Project No. 22, as shown by all the pleadings, testimony of J. J. Hudspeth, clerk of the board of supervisors and all the orders and minutes of said board made as exhibits to the testimony of the said J. J. Hudspeth?

There is no question but that all the records show that the contract had been completely performed and that final settlement made and had and the obligee called upon the court to distribute the proceeds of warrant No. 173 and decree to whom it should go. The law is plain that appellees, from the date of this final settlement, had "to commence their suit within one year, etc.", but note the language as to when the time begins to run, etc., "But said time for the institution of said action shall not begin to run until the obligee shall have made final settlement, or determined said abandonment and published notice thereof." Therefore it is undoubtedly the case that the only purpose of this notice to be published by the obligee in the newspaper as therein set out is to fix the time of one year in which to begin the suit, that is, claimants do not have to wait after final settlement until the obligee publishes this notice, but upon publication of the same by the obligee, claimants have one year from that date within which to institute their suit. This portion of the law is not a prohibitive statute but is rather an enabling one. As to all other sections and portions of this law, it is admitted, and the record without question shows, that the suit was instituted, notice of same published and this cause proceeded with as made and provided by said statute.

The facts and the pleadings with reference to appellee, R. F. Dancy, contained in this record clearly and plainly show that Mr. Dancy never, in any manner did anything that would relieve appellant or release the surety company from paying him what was justly and admittedly due him for labor performed and materials furnished on said project.   The language of the law, the stipulations of the contract, and the conditions of the bond all specifically, definitely and positively provide that appellants "shall pay the said agents, servants and employees, and all persons furnishing said principal with material and labor in the course of the performance of said work, etc. . . . , and all the expense and attorney's fee that may be incurred in the enforcement of the conditions and obligations of this bond, etc."

When Mr. Dancy was not paid for his work and materials furnished in the amount admitted to be due him, he immediately took the matter up with the Oliver Construction Company.   They not only assured him that his money was good, but on January 3, 1922, telegraphed him that they would "withhold settlement with Lansdale and Ackerman, etc."   They made what purported to be an assignment in collusion with Lansdale and Ackerman which was made a matter of record for the very purpose of defeating the rights of appellee.   When Dancy was summoned in as a defendant by the bill of interpleader filed by Benton county, Mississippi, was he electing, as appellants argue, to release one party and sue another?  Was he, as the law contemplates, prosecuting any suit to a final judgment against the appellant when none of them were in any wise made parties to this bill of interpleader?   He was there by virtue of his being summoned into court as a defendant and in an effort to keep from being defrauded and asserting his rights to the very money that was paid by Benton County for the work which was done by him.

Appellants argue that Mr. Dancy is suing on notes. It will be seen from this record that the "notes" to

which so much time and discussion has been devoted by appellants were exhibits just as Mr. Dancy's itemized accounts and showed just as the original books of entry showed, that he was due the amounts he sued for as shown by this record for labor performed and materials furnished. The notes, itemized accounts, and original books filed in this cause are nothing more, nothing less, than evidence of indebtedness for accounts stated showing the amount due Mr. Dancy for his work on this highway and the signatures of Lansdale and Ackerman affixed to said notes, due bills or evidence of indebtedness were simply their O. K. showing that the sums evidenced thereby were correct and due and owing to Mr. Dancy for work done on this project, the payment of which, the appellants are liable for under their contract, bond and the law of the land.

I most respectfully submit that no case cited by appellants is in point with the case at bar and is applicable to the facts with reference to appellee, R. F. Dancy. *Murphy* v. *Hutchinson,* 93 Miss. 643, as all the others relied upon by appellants to substantiate their contention, contains an entirely different statement of facts to the case at bar, presents different issues, and settles principles of law entirely foreign to this law suit. The case in my judgment that is nearest in point by far and settles the real principles of law and the true issues presented by this record in favor of appellee, is *National Surety Company* v. *Hall Miller Decorating Company,* 104 Miss. 626. Although this case was decided by this court some time prior to the enactment of the Laws of 1918, chapter 217, the able and learned opinion of Mr. Justice Cook goes to the very heart of the issues and the real reason of the law so strikingly applicable to the case at bar. Furthermore the case of the *United States Fidelity & Guaranty Co.* v. *Marathon Lumber Company, et al.,* 119 Miss. 802, clearly shows the necessity, wisdom and the right and justice for such a law.

*Lester G. Fant* and *L. T. McKenzie*, for appellees.

J. H. Gresham's claim was itemized and filed with the original declaration in the circuit court case. When the bill was filed in the chancery court it was not filed as an exhibit to the bill but in the chancery court proceeding it was made an exhibit, and these papers were all introduced into the record. The defendants in the circuit court are the same as the defendants in the chancery court, appellants here, and they cannot now at this late date object to this claim because it was filed as an exhibit to the declaration in the original cause, and they were advised of its contents and the chancellor in hearing the proof, held, very properly, that this was in the nature of a general creditor's bill in equity and every creditor who had a claim against the Oliver Construction Company for supplies furnished on account of the progress of this work, or otherwise, would be entitled to come in and prove his claim. Chapter 217, Laws of 1918, provides that when the suits are brought all the parties shall have a right to come in, the only limitation being that they shall come in within a year after the publication is made. So we find that Gresham did come in, according to the record, within the proper time and propounded his itemized claim, and introduced proof, which was passed on by the chancellor.

The court found that the note taken by J. D. Dickerson was a note given him by the subcontractor to show the amount due, and that it was for work and labor in connection with Federal Aid Project No. 22. The court heard all the proof on this question and it was the undisputed proof that this claim was for work.

R. E. Crawford's claim is in exactly the same fix of the two above; the notes were filed with the circuit court papers as has been shown before, and the chancellor heard all the facts connected with the claim and held that the suit having been brought in time that Crawford having been a party to the original suit, the amounts

were correct and were expended for the purpose of
building the highway; the bondsmen were liable for the
amounts.

No authorities are cited in the brief except as to the
claim of R. F. Dancy. The reason apparently assigned
for dismissing Dancy's claim on the part of appellants
is that they say there was a novation, and an election of
remedies which should bar the suit. A sufficient reply
to these contentions is there was no novation, because
no third party was brought into the transaction. The
only effect of the note was to acknowledge the correct-
ness of the amount due. This is not a novation, and the
fact that Dancy took his note and kept his account and
proceeded to sue the Oliver Construction Company and
their bondsmen, does not show any election of remedies
that work any hardship or prejudice the appellant in
this cause.

*Chas. Lee Crum,* in reply for appellants.

Crawford's notes and account, nor Gresham's account
do not appear therein as exhibits to the declaration.

At the conclusion of the trial of this case, after argu-
ment of counsel and after all evidence in the trial had
been concluded, the court below made this ruling: "In
the midst of the trial leave was asked to file several
accounts, which was objected to by the defendant. The
court now overrules the objection to the filing of the
accounts, believing that chapter 217, Laws of 1918,
authorizes the presentation of the accounts proper on
the trial."

If the time to begin the suit is fixed at one year after
the county published the notice and the suit is brought
before this time begins to run, then I insist that this suit
is prematurely brought and must be dismissed at com-
plainants' cost. Final settlement by the county and
publication of notice thereof are conditions precedent to

the bringing of the suit in this case.  1 C. J., sec. 72, p. 976.

A mere reading of the notes shows them to be ordinary promissory notes of Lansdale and Ackerman into which the proof clearly and indisputably shows all accounts due Dancy were merged.   The allegations of the bill and the proof show that Dancy's accounts were merged into the two notes he took from Lansdale and Ackerman.

The cases of *National Surety Company* v. *Hall Miller Decorating Company*, 104 Miss. 626, and *United States Fidelity & Guaranty Co.* v. *Marathon Lumber Company*, 119 Miss. 802, have no application to any point of law or fact raised in the case at bar.

Argued orally by *C. L. Crum* and *Chalmers Alexander*, for appellant, and *Lester Fant* and *Wall Doxey* for appellee.

HOLDEN, P. J., delivered the opinion of the court.

The Oliver Construction Company and the National Surety Company appeal from a decree allowing the appellees Dancy and others certain amounts of money claimed by them to be due for labor and material furnished in the construction of a public road across the southern end of Benton county, known as federal aid project No. 22; the construction of said road having been undertaken by the Oliver Construction Company under a contract with the board of supervisors, and the National Surety Company having furnished bond for the performance of the contract in compliance with chapter 217, Acts of the legislature of 1918.

The case in short is this:   The Oliver Construction Company entered into contract with the board of supervisors to constuct the public road in question, and the National Surety Company furnished bond for the faithful performance of the contract, with the provision to "pay the said agents, servants, and employees, and all

persons furnishing said principal with material and labor in the course of the performance of said work,'' etc., and which obligation is also provided in chapter 217, Laws of 1918, that reads in part as follows:

''That any person entering into a formal contract with this state, any county thereof, municipality therein, or any political subdivision whatsoever therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor; and any person who has furnished labor or materials used therein and wherefor payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have their rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the obligee.'' Section 1.

The contract was then sublet to Lansdale & Ackerman, who undertook to construct the road according to the terms of the original contract. The board of supervisors continued to recognize the Oliver Construction Company, only, as the contractors, and issued warrants payable to it in payment for the work as it progressed. The appellees Dancy and others performed work and furnished material in the construction of the road under the said subcontractors, Lansdale & Ackerman, who issued to appellees their duebills or notes at intervals which represented or showed the accounts due to appellees for services rendered and material furnished in the construction of the road. These duebills or notes issued by the subcontractors were in the nature of stated accounts of the amounts due the appellees for their labor and material furnished, and were to be paid at intervals while the work progressed.

When the contract was completed and a final settlement between the board of supervisors and the Oliver Construction Company was made, the appellees were left unpaid the amounts due them for their labor and material furnished in the building of the road, and they instituted this suit to recover the amounts due them from the Oliver Construction Company and its surety bonding company. We have omitted stating certain other features and phases of this litigation because we think it necessary to do so, since the questions raised by appellants with regard thereto do not merit discussion by us, as they are clearly not maintainable.

We think the only serious point raised by the appellants is whether or not the appellees waived or released their rights to go against the Oliver Construction Company and the Surety Company for the balance due them, on the ground that appellees accepted the duebills or notes of the subcontractors, Lansdale & Ackerman, which represented statements of the amounts due appellees for labor and material furnished in the construction of the road, and thereby waived or released (or novated, as contended by appellants) their right to hold the original construction company and the Surety Company liable for the amounts due appellees for labor and material furnished in the work, as provided by the contract and chapter 217, Laws of 1918, which is written into the bond of the Surety Company herein.

It is our judgment that there was no novation or release by the appellees of their right to recover against the Oliver Construction Company and the Surety Company on the bond for the amounts due them for labor and material furnished in the construction of the public road. The duebills or notes received by appellees from the subcontractors, Lansdale & Ackerman, merely represented the amounts due appellees for labor and material furnished in the work, and was so understood, and appears to have been more in the nature of stated accounts showing the amount of work done and material

137 Miss.—32.

furnished for which the appellees were to be paid at different times.

There could be no release or waiver of the right of appellees to go against the surety bond and the Oliver Construction Company, merely by receiving these written evidences of the amounts due them for labor and material furnished in the work. There was no agreement between the parties that the subcontractors were to be individually substituted and looked to independently for the balances due for the labor and material furnished.

The subcontractors were acting for and in the place of the Oliver Construction Company, and the laborers and materialmen had the right, under the contract and the bond, to look to the Construction Company and the Surety Company for payment for the services and material furnished in the event that the subcontractors, the agents who took the shoes of the Oliver Construction Company, failed to pay appellees for the labor and material furnished. The cases of *National Surety Co.* v. *Hall-Miller Co.,* 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325, and *U. S. Fidelity Co.* v. *Marathon Lumber Co.,* 119 Miss. 802, 81 So. 492, are in point as showing the liability of an original contractor and his surety bond for all amounts due to subcontractors, laborers, and materialmen who furnished labor and material in the construction of a public building or public road.

If the appellees, who furnished the labor and material going into the construction of the road, had accepted an independent settlement, obligation or security from the subcontractors, Lansdale & Ackerman, and had by agreement thus substituted the subcontractors in the place of the original contractor, and its bondsmen, then a very different question would be presented in this case, for, under such a state of facts, it may be, though we do not decide because unnecessary to do so, that appellees would have waived and released by novation their right to go against the Oliver Construction Company and its bond of the Surety Company.

But the case before us is not one of release or novation by the parties, and the mere fact that the appellees furnished the labor and material to the subcontractor who was carrying out the contract for the original contractor, the Oliver Construction Company, and that the subcontractors issued their duebills or notes as the work progressed, which showed and represented the amounts due appellees for their labor and material, did not constitute a waiver of the right of appellees to go against the Oliver Construction Company and its bond which undertook in the first instance to guarantee the faithful performance of the contract, and "that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor." Appellees had a right to depend upon the contract and bond of the Oliver Construction Company to secure payment for all labor and material furnished the Oliver Construction Company, or its substitute and agents, Lansdale & Ackerman.

The Olive Construction Company and its surety could not escape this obligation to pay for labor and material by subletting the work to some other contractor, or by securing some other person or firm to do the work provided for in the contract, because the subcontractor was, under the contract and bond, acting for the original contractor in peforming the contract, and all laborers and materialmen had the right to look for payment to the original contractor, the principal in the bond, and the Surety Company on the bond. The obligation of the bond cannot thus be evaded by subletting the contract to some other person who completes it for the original contractor.

We have considered the other questions presented by the appellants, and do not think the complaints are tenable, and therefore we have not discussed them. In view of the above conclusions the decree of the lower court is affirmed.

*Affirmed.*