AMMONS v. KELLOGG.*

(Division B. Jan. 26, 1925.)

[102 So. 562. No. 24549.]

1. ANIMALS. *Owner of bees attacking animals liable for damages.*
   The owner of bees who has reasonable notice of the vicious character of such bees in attacking animals is liable for the damages resulting therefrom ·where he places the bees in proximity to where he knows such animals will be used.

2. ANIMALS. *Evidence held to show defendant's bees attacked animals.*
   In an action for damages against the owner of bees for their vicious attack upon animals, evidence that the defendant had large numbers of bees in the immediate vicinity of the attack, with proof that the bees came from the direction in which the hives were located, is sufficient for the jury to infer that the defendant's bees did the damage.

---

*Headnotes 1. Animals, 3 C. J., section 137; 2. Animals, 3 C. J., section 375.

APPEAL from circuit court of Washington county.

HON. S. F. DAVIS, Judge.

Action by Charles Kellogg against Will Ammons. From judgment for plaintiff, defendant appeals. Affirmed.

*Boddie & Farish,* for appellant.

The appellant prosecutes this appellee from a judgment rendered by the circuit court of Washington county at its June term, 1924, in favor of the appellee for two hundred fifty dollars, the alleged value of a horse and mule stung to death while plowing in a field some seventy-five yards away from a drainage ditch embankment ten feet above the level of the field, by a swarm of bees alleged to have belonged to appellant. Appellant had maintained eighty-two hives of bees on top of said embankment for six or seven years prior to the occurrence complained of, maintaining them, as shown by the evidence in the case, in a proper and reasonably careful manner. We submit that if the appellant is to be held liable for the value of the horse and mule stung to death under the circumstances shown in this case, that no one in the state can safely engage in the bee business and that the honey industry is about the most hazardous business that one can engage in. We are at a loss to know what greater care and caution a man can adopt than was exercised by the appellant. The rows that the appellee was plowing are shown to be twenty feet from the base of the embankment on which the hives were. The proof shows that there was much brush and shrubbery growing on the embankment and that the appellant had sowed sweet clover thereon, from which his bees sucked the nectar, and that cattle had been grazing on top of the embankment.

We, also, submit that a fair reading of the testimony shows that the appellant had no reason whatever to believe that his bees would attack men and animals plow-

ing in the surrounding fields, although something is said about one or two of them having attacked his own horse, and it seems that one negro some years ago gave up his land because of the bees; but the appellant, as shown by the proof, had never heard of that. The witness, Rafe, says that appellant told him that some bees stung him once, but he stated over and over again that he did not refer to these particular bees. This is the first and only "bee case" that this court has been called upon to pass on so far as we can find, but it seems that there have been a few such cases passed on by the courts of last resort, among them being the case of *Parsons* v. *Phillip Manser,* 62 L. R. A. 132. In that case, the defendant had located his hives within a few feet of a post which he had fixed for fastening horses to, and the defendant knew that bees were prone to attack perspiring horses. The evidence in this case fails to show any such knowledge on the part of the appellant, and we submit with confidence that it shows affirmatively that he not only exercised reasonable care in the location of his bees, but that he could not have selected a place for their location where they would be less liable to inflict inury. They were a mile and a half in the country on top of a ten foot embankment, the base of which was twenty feet away from the plowed ground, and the manner in which they were hived and kept is shown by the undisputed proof to have been proper.

Bees should be differentiated from animals, such as bulls, dogs or horses. If a man owns a bull or a dog or a horse that he keeps on his premises without knowledge of vicious propensities on the animal's part, and such animal injures another, the owner is not liable; whereas, if the owner has reason to believe that such animal will inflict injury, yet permits him to run at large, he is liable for whatever injury the animal inflicts. It is common knowledge that animals differ from each other in disposition and conduct, and we submit that it is common knowledge that there is no difference between any two

hives of bees. The habits, disposition and propensity of honey bees is now, has been and always will be the same, and we think that this court should take judicial notice of the doings and habits of bees, as it is such common knowl-edge.

*Wynn & Hafter,* for appellee.

The appellee brought suit in the circuit court of ·Washington county, Mississippi for the sum of five hundred dollars, being the alleged value of his mule and horse which were stung to death by the bees owned by the appellant. ˙ No recovery was asked for injury done to the appellee and his son. Upon the closing of the testimony instructions were˙ passed on by the court and the jury returned a verdict for the appellee for the sum of two hundred fifty dollars, and from that verdict the appellant has taken this appeal. Appellant relies upon the refusal of the lower court to grant the peremptory instructions as the basis of reversal. The question of negligence in placing and keeping the bees, as well as the keeping of the bees after the appellant had knowl-edge of their vicious propensities, was clearly a ques-tion for the jury. We have failed to find any case in which the supreme court of Mississippi has ruled on the law governing this question. However, the question of the liability of the owners of bees for damages done by them is not a new question. The courts have been uni-versal in holding the owners of bees liable where a proper case is presented; 1 R. C. L. 1089, in discussing the liability of animals states that "bees are kept for the convenience of man, tho *ferae naturae,* are excepted from the rule of law that the keeping of all wild animals evidences negligence," and cities in note 13 the case of *Parsons* v. *Manser,* 62 L. R. A. 132, found in an Iowa case tried in 1903, and is the selected case cited in the 14th annotated cases in the 62nd note. This seems to be the selected and leading case on this subject and lays

down the doctrine on page 135 that: ''A person keeping a mischievous animal with knowledge of its propensities is bound to keep it secure at his peril, and that if it does mischief, negligence is presumed,'' and that ''negligence is in keeping such an animal after notice;'' and ''liability for safe keeping depends not so much on the classification of animals into wild and domestic as upon their natural propensity for mischief,'' and this case seems to place the liability for damage done by bees on the theory that the hives must be so located as to avoid unnecessary danger to those who are likely to make lawful use of the premises or the highway nearby. This case is, also, reported in the 62nd L. R. A. 132 and 97 Am. St. Rep. 283.

The instructions for the appellee were drawn and based on this case of *Parsons* v. *Manser, supra,* on the theory that it was the duty of the defendant to exercise ordinary prudence in so placing hives of bees as to avoid unnecessary danger to those who are likely to make lawful use of their premises. And further, that the defendant must have some knowledge of the vicious propensities of the bees. There was, also, an instruction to the effect that it was unnecessary for the plaintiff to especially identify the bees, but that it was sufficient if shown by the preponderance of evidence that the jury believed that the bees were the property of defendant. The testimony shows that the bees which attacked the appellee came and went to and from the direction of the hives owned by the appellant, and that there were no other hives in the vicinity and the jury decided that the bees which attacked the appellee were the bees of appellant. The sole question, therefore, in this case was one of negligence, and consisted in whether or not the appellant had a knowledge of the vicious propensities of the bees.

A search of reported cases shows any number of instances where swarms of bees have done considerable damage to man and beast. Appellant on one occasion

was forced to move his horse a considerable distance from the bee hives because the horse was freightened. The appellant states that he moved the horse because he was frightened. The horse had a knowledge of the vicious propensities of the bees, and was frightened. Certainly the owner of the horse had the same degree of common sense as did the horse. Counsel for appellant states that if the appellant is to be held liable in this case no one in the state can safely engage in the bee business, and that the honey industry is about the most hazardous business that one can engage in. We answer by asking which is the most essential business, that of the honey bee, or that of cotton and corn farming?

ETHRIDGE, J., delivered the opinion of the court.

The appellant was defendant below, and prosecutes this appeal from a judgment against him for two hundred fifty dollars for the value of horses killed by bees of the defendant.

It appears that the plaintiff, Kellogg, was a tenant on certain lands through which a drainage canal ran. Ammons lived near and secured permission from the drainage commissioners to place bee hives upon the canal embankment elevated some feet above the surrounding ground. The plaintiff, Kellogg, and his son were plowing on Kellogg's farm near the said embankment. A large swarm of bees came from the direction of the defendant's bee hives and stung his horses to the extent that they died, and also stung the plaintiff and his son. It appears that the defendant had about eighty-two bee hives, and, after they stung the plaintiff, his son, and his horses, he stated, so they testified, that the bees had stung his horses on a prior occasion. There was also evidence that another horse had been stung by the bees, but the plaintiff failed to show that this came to the knowledge of the defendant. The issue was sub-

mitted to the jury on instructions presenting the theory that, if the defendant knew of the character and disposition of the bees, and that they are prone to attack people and animals, defendant was liable, and also on the theory that it was not necessary for the bees to be specifically identified as the bees of defendant, but that, if they came from the direction of the defendant's hives, and were in close proximity to the hives, the jury were authorized to find from the circumstances that the bees belonged to the defendant.

The court instructed the jury for the defendant, first, that the plaintiff must prove that the bees which stung the plaintiff's horses were the property of the defendant; and, second, that the defendant was negligent in the placing or keeping of his bees, and that it was because of the negligence on the part of the defendant that caused the loss of plaintiff's horses; and that the defendant had a perfect right to keep bees, they being useful and serviceable property, the only duty imposed on him by law being to place and maintain them in a reasonably safe place and manner; also that the jury must believe from the evidence that the defendant had notice or knew that bees were dangerous and were likely to sting animals under the circumstances that existed at the time the animals were killed.

There seems to be no direct case in our own reports discussing the liability of the keeper of bees for injury done by them, but it seems to be the general rule in other states that, as bees are useful to society, and are property of value, the ordinary rule as to wild animals, imposing absolute liability for the injuries inflicted by them, is not applicable to bees but the rules of domestic animals; that is, that the owner must know of their vicious tendencies, and that the owner is under a reasonable duty to place bees so they will not come in contact with persons traveling roads and similar places.

The learning on the subject is collated and discussed in *Parsons* v. *Manser,* 119 Iowa, 88, 93 N. W. 86, 62 L. R. A. 132, 97 Am. St. Rep. 283, and notes.

We think from the facts in the record the jury had a right to find for the plaintiff, and the judgment will be affirmed.

*Affirmed.*