Mississippi Road Supply Co. *v.*
Western Casualty & Surety Co.; et al.

No. 42593          March 18, 1963          150 So. 2d 847

*Butler, Snow, O'Mara, Stevens & Cannada, Watkins, Pyle, Edwards & Ludlum, Wise, Smith & Carter,* Jackson; *C. W. Sullivan, R. W. Sullivan,* Hattiesburg, for appellant.

*Cox, Dunn & Clark,* Jackson, for appellees.

512

McElroy, J.

This suit is from the Chancery Court, Hinds County, on assignment of error that the court erred in sustaining the demurrer of the defendants.

Suit was filed for a claim in the principal amount of $1,465.89 plus interest thereon, and 25% attorneys' fees of the total of such amount, which expense and cost and attorneys' fees are incurred in the enforcement of the complainant's rights, etc., i.e., under the bond given in this matter. The court sustained the demurrer to the original bill, and the amended bill of complaint states that the material, labor and supplies which are set forth and itemized in Exhibit C were furnished by complainants to L. W. and Ray D. Smith for and were used by them in performance of the work called for in the contract, Exhibit A, on the Federal Aid Secondary Project No. S-0153(3)A, Contract I. In the performance of the work called for in the contract, it was necessary that certain equipment be utilized; for instance, draglines, motor graders, tractors, dragline buckets, and similar equipment. L. W. Smith and R. D. Smith utilized such equipment in the performance of the work, and the material, labor and supplies furnished by the complainant and itemized in Exhibit C were necessary to the maintenance and operation of the equipment in the performance of the work and were furnished by complainant to L. W. and R. D. Smith for the work in the performance of the contract.

On July 31, 1959 Newsome Brothers entered into a contract with the State Highway Commission for construction of a certain highway in Wilkinson County, Mississippi, known as Federal Aid Secondary Project, No. S-0153(3)A, Contract I. By virtue thereof, the said contractor agreed to furnish all labor, material and equipment and to execute all the work called for in the contract for construction of the highway. On the date of the contract, the Newsome Brothers, Principal, and the Western Casualty & Surety Company, Surety, executed a performance bond in payment of $479,681.70, conditioned upon faithful performance of the contract, etc.

The Newsome Brothers contracted by subcontract to Monroe Allen, Contractor.

Monroe Allen, Contractor, subcontracted to L. W. Smith and Ray D. Smith of Carthage, Mississippi.

While L. W. Smith and Ray D. Smith were about the performance of the work called for in the contract, at the site working on the road, the Mississippi Road Supply Company furnished to L. W. Smith and Ray D. Smith their special requests for supplies, labor and material for use in carrying out the work called for in the contract, which were necessary in carrying out the work, and which were used in carrying out the work.

The contract was fully performed and completed. Final settlement was made, and notice duly published. The State Highway Commission made full payment to Newsome Brothers. However, the amount of $1,465.89, which was owed to the Mississippi Road Supply Company for the material, labor and supplies furnished by it, was not paid, and demand was made of the contractor and sureties, and the demand was refused.

The question presented in the case is whether laborers and materialmen who perform services for supplying materials directly to a subcontractor who is carrying out the work called for in a state public works contract, are denied the right set forth in section 8041 et seq. and section 9014 et seq., Mississippi Code of 1942 simply because such laborers and materialmen did not deal directly with the prime contractor or a first subcontractor.

Section 8041, Miss. Code 1942 provides as follows:

". . . Bonds shall be required in every instance of the successful bidder in an amount equal to fifty per cent (50%) of the contract price; . . . all bonds to be payable to the State of Mississippi and to be conditioned for the prompt, faithful and efficient performance of the contract according to plans and specification, and for the *prompt payment* of all persons furnishing labor, ma-

terial, equipment and supplies therefor; . . ." (emphasis supplied).

Section 9014, Code of 1942 states:

"Any person entering into a formal contract with this state, any county thereof, municipality therein, or any political subdivision whatsoever, therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual bond, . . . with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor; and any person who has furnished labor or materials used therein and wherefor payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have their rights adjudicated in such action . . . . If the full amount of liability of the surety thereof is insufficient to pay the full amount of said claims and demands; then, after paying the full amount due the obligee, the remainder shall be distributed pro rata among said intervenors."

The Court held in Alabama Marble Co. v. United States Fidelity & Guaranty Co. et al., 146 Miss. 414, 111 So. 573 (1927): "To put it in different words, the bond here, which the law provides may be given to take the place of the old mechanic's lien, or materialman's lien, was intended to guarantee payment only to the contractor or materialman who deals directly with the principal contractor."

Also the Court stated: "We think there is quite a difference between the two statutes (chapter 217, Laws of 1918, and chapter 128, Laws of 1918), (now Sec. 9014, Miss. Code 1942) and that the bond of the contractor under chapter 217, Laws of 1918, requires that all laborers and materialmen must be paid for the labor and materials that go into the construction of the public buildings, regardless of whether they are remote ma-

terialmen, or whether they have furnished the materials directly to the principal contractor; . . ."

In Shuptrine et al. v. Jackson Equip. & Service Co., 168 Miss. 464, 150 So. 795 (1933), a subcontractor, in carrying out highway construction work, rented a crane with dragline equipment from the plaintiff, who sued the prime contractor and its surety for the unpaid rentals thereof. The defendants took the position that the prime contractor's bond was not liable for the equipment furnished to a subcontractor, since the contract between the prime contractor and the subcontractor is a private, rather than a public contract. This Court rejected that argument and affirmed the lower court's overruling of the defendant's demurrer. See H. F. Vann Nieuwenhuyze & Sons Construction Co. v. Ray Irby et al., 232 Miss. 474, 99 So. 2d 651 (1958).

In Arkansas Fuel Oil Co. v. Trinidad Asphalt Mfg. Co., 189 Miss. 366, 198 So. 41 (1940), this Court held that the statutes relating to the bond for highway work " . . . impose liability upon the original contractor to pay all persons who furnish labor, material, equipment or supplies for, and in the course of, the performance of the contract, and this includes materials and supplies furnished to a subcontractor, as this Court has several times held."

In Western Cas. & Sur. Co. v. Stevens et al., 218 Miss. 627, 67 So. 2d 510, (1953), the bonding company denied a materialmen's claim. The plaintiff sued the surety company who defended on the ground that although the materials were incorporated in the project they were neither ordered by nor billed to the defendant or its subcontractor, the Davis Plumbing Company. This Court held that it was immaterial that Horne was not the contractor when such material was ordered, delivered or installed, and stated: " . . . (Sec. 9014, Miss. Code of 1942) 'requires that all laborers and materialmen must be paid for the labor and material that go into

the construction of the public buildings, regardless of whether they are remote materialmen, or whether they have furnished the materials directly to the principal contractor; . . .' "

Appellees rely principally on the decision of the Court in Webb, d.b.a. Mid-State Paving Co., et al. v. Blue Lightning Service Co. et al., 237 Miss. 862, 116 So. 2d 753, (1960). The contractor in this case made an oral agreement with Richton Gravel & Concrete Company to purchase washed gravel delivered at the pits. The plaintiff and intervenors sold to Richton Gravel & Construction Company such items as gasoline, diesel fuel, oil, batteries and light bulbs used by the Gravel Company in mining the gravel. This Court cited with approval Western Casualty & Surety Co. v. Stevens, *supra,* H. F. Vann Nieuwenhuyze & Sons Const. Co. et al. v. Ray Irby et al., and also the Oliver Construction Co. v. Dancy, *infra,* fully recognizing that if Richton Gravel & Concrete Company had been a subcontractor, the plaintiffs would have been covered by the bond; the Court held, however, that Richton Gravel & Concrete Company was in itself a materialman and not a subcontractor, and therefore the plaintiff and other claimants were materialmen of materialmen. The distinction is clearly spelled out, and it is stated in the case: "The contractor and his sureties are liable for material furnished to a subcontractor but not liable to one from whom the materialman purchases material . . . . A subcontractor — that is one who undertakes to construct some definite part of a building — in some sense represents the contractor, and he represents the owner of the building."

In Stowell et al. v. Clark, 152 Miss. 32, 118 So. 370 (1928), the prime contractor sublet a part of the work in constructing a highway to one Galbreak, who, after partially completing the work, abandoned it and the contractor then sublet the work to the plaintiff. The

plaintiff sued the prime contractor and the surety who defended in part on the theory that the provision in the bond for payment of attorneys' fees was for the benefit of the obligee alone. In that connection, the Court stated: "The surety bond was for the benefit of the subcontractors and others supplying labor and materials, that went into the road work, as well as for the benefit of the county. The purpose of the bond was to make them whole; and, in order to do so, the bond provided that all expenses and costs and attorney's fees incurred by them in the enforcement of their rights should be paid by the obligors in the bond."

The case of Oliver Const. Co. et al. v. Dancy, et al., 137 Miss. 474, 102 So. 568, (1925) was cited by this Court with approval in the case of Webb v. Blue Lightning Service Co., *supra.*

All of the facts are not fully set forth in the report of 102 So. 562, but may be found in the report of another case arising out of the same transaction, that is, Oliver Const. Co. v. Crawford, 142 Miss. 490, 107 So. 877. In 1919 the Board of Supervisors of that county entered into a contract with Oliver Construction Company for the construction of Federal Aid Project No. 22, being a part of the Bankhead Highway, and the general contractor executed its bond with the National Surety Company, as surety. Subsequently, the Oliver Construction Company sublet the contract, or a part thereof, to one Brown, who in turn let the contract to one Landsdale and Ackerman who constructed the highway, employing certain laborers and subletting some part of the work to other persons. The plaintiff and other intervenors performed work and furnished material to Landsdale and Ackerman, who issued them due bills and notes in the nature of stated accounts for the amounts due. These parties sued the contractor and the surety on the bond, and in addition to holding that the acceptance of the notes did not constitute a waiver of the right to sue

on the prime contractor's bond, this Court rejected the argument of the defendants that the bond was not liable and stated:

"The subcontractors were acting for and in the place of the Oliver Construction Company, and the laborers and materialmen had the right, under the contract and the bond, to look to the construction company and the surety company for payment for the services and material furnished in the event that the subcontractors, the agents who took the shoes of the Oliver Construction Company, failed to pay appellees for the labor and material furnished. The cases of National Surety Co. v. Hall-Miller Co., 104 Miss. 626, 61 So. 700, 46 L.R.A. (N.S.) 325, and U. S. Fidelity Co. v. Marathon Lumber Co., 119 Miss. 802, 81 So. 492, are in point as showing the liability of an original contractor and his surety bond for all amounts due to subcontractors, laborers, and materialmen who furnished labor and material in the construction of a public building or public road.

\* \* \*

"The Oliver Construction Company and its surety could not escape this obligation to pay for labor and material by subletting the work to some other contractor, or by securing some other person or firm to do the work provided for in the contract, because the subcontractor was, under the contract and bond, acting for the original contractor in performing the contract, and all laborers and materialmen had the right to look for payment to the original contractor, the principal in the bond, and the surety company on the bond. The obligation of the bond cannot thus be evaded by subletting the contract to some other person who completes it for the original contractor."

The prime contractor in the case at bar agreed in the contract with the State Highway Commission to furnish all labor, materials, and equipment, and to execute all of the work specified in the contract. To secure

the carrying out of said contract, the contractor and the surety company executed their solemn bond containing the following conditions, among others:

"NOW, THEREFORE, if the above bounden Newsome Brothers in all things shall stand to and abide by and well and truly observe, do, keep, and perform all and singular the terms, covenants, conditions, guarantees, and agreements in said contract, contained on his (their) part to be observed, done, kept, and performed, and each of them, at the time and in the manner and form and *furnish all of the material and equipment specified in said contract in strict accordance with the terms of said contract * * * and shall promptly pay the said agents, servants, and employees and all persons furnishing labor, material, equipment or supplies therefor, * * ** with the additional obligation that such contractor shall promptly make payment of all taxes, licenses, assessments, contributions, damages, penalties, and interest thereon, when and as the same may be due this State, or any County, Municipality, Board, Department, Commission, or political subdivision; *in the course of the performance of said work and subject to the provisions of Section* 9016 (9014 *and* 9014.01) *of the Mississippi Code of* 1942, *and other state statutes applicable thereto,* and shall carry out to the letter and to the satisfaction of the Director of the State Highway Department, all, each and every one of the stipulations, obligations, conditions, covenants and agreement and terms of said contract in accordance with all terms thereof * * *"

**(Hn 1)** This is not a case of a materialman furnishing material to a materialman, but is a case of a subcontractor buying material to go into the work under the contract and the bond of the original contract. We are of the opinion that the petition stated sufficient facts to show that the material furnished to the subcontractor was for the project under the Newsome Brothers' contract with the State Highway Commission. The bill

states a good cause of action and the court was in error in sustaining the demurrer. The case is therefore reversed and remanded for a new trial.

Reversed and remanded.

*Lee, P. J., and Ethridge, Gillespie and Rodgers, JJ.,* concur.